## UNITED STATES v. PACIFIC FRUIT & PRODUCE CO.

### No. 10340.

Circuit Court of Appeals, Ninth Circuit.
Oct. 18, 1943.

Rehearing Denied Dec. 1, 1943.

Francis M. Shea, Asst. Atty. Gen., David L. Kreeger, Sp. Asst. to Atty. Gen., Irvin M. Gottlieb, of Washington, D. C., and Edward M. Connelly, U.S. Atty., of Spokane, Wash., for appellant.

Ryan, Askren & Mathewson and Howard W. Sanders, all of Seattle, Wash., for appellee.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

## GARRECHT, Circuit Judge.

This court has been asked to determine whether or not there was an abuse of discretion when the court below dismissed with prejudice the appellant's action for an accounting, after the appellant had virtually admitted a failure of proof and had requested a voluntary nonsuit.

The appellant's complaint set up twenty separate causes of action against the appellee. Typical of these was the third cause of action, which involved the following undisputed facts:

In 1936 and 1937, the United States, through the Farm Security Administration (formerly the Resettlement Administration) lent money on promissory notes to George M. Brisky and Evelyn Brisky of Chelan County, Washington, taking as security a crop and chattel mortgage that gave the United States a first lien on all fruit crops produced by the Briskys during 1937 upon specified real property. The sum of $770.11 remains due on those notes.

The funds advanced to the Briskys by the United States were insufficient to finance the entire cost of producing and marketing their 1937 fruit crops, and the additional funds were obtained from the appellee on the security of a lien on those crops. To enable these additional advances to be made, the appellant agreed to subordinate its lien on the crop to the lien in favor of the appellee, but such subordination was expressly "limited to the extent of 60 cents per box on all fruit sold by the mortgagors." The subordination agreement gave the appellee "the right to deduct and receive from all sales made by the * * * mortgagors * * * the sum of 60 cents per box from each sale" until the loan made by the appellee shall have been paid in full. The agreement gave the appellant "a first lien on all proceeds from each * * * sale of any part of the mortgagors' 1937 fruit crops after the deduction of 60 cents per box from the proceeds of each sale has been made" by the appellee.

Thereafter, the appellee advanced funds and rendered services to the Briskys to aid them in financing the production, handling and marketing of their 1937 fruit crop, consisting of 1,137 boxes of apples, which the Briskys delivered in its entirety to the appellee.

Each of the twenty causes of action in the complaint related to a different borrower, set up the amount due the appellant from that borrower, and described the land upon which he was to raise the 1937 fruit crop mortgaged to the appellant. All the twenty causes of action were otherwise the same, containing the allegation that the appellant's mortgage had been subordinated in favor of the appellee to the extent of 60 cents per box, and that the entire 1937 crop of each borrower had been delivered to the appellee. The complaint prayed that the appellee be ordered to render a full accounting of the transactions between it and each of the borrowers, relating to the production, handling and sale of their fruit; the sums advanced and the services rendered or charges incurred in behalf of each borrower; the quantity and the quality of the 1937 fruit crops delivered by each borrower to the appellee; the proceeds of each sale of such crops; and the amount that the appellee was authorized to deduct therefrom as reimbursement for funds advanced and services rendered to the borrower. The complaint also prayed "that plaintiff have judgment against the defendant for any sums * * * found to be due to the plaintiff upon such accountings," and for other relief.

By the court's direction, only the third cause of action was tried, the judgment in that case to be "applicable to the other causes of action contained in the plaintiff's complaint."

At the trial, the appellant contended that its first lien on the Briskys' 1937 fruit crop, as modified by the subordination agreement, required that all proceeds received by the appellee from each separate sale of the fruit in excess of the 60 cents per box must be paid over to the appellant before the deduction of any charges such as warehousing, freight, storage, and the like. The appellant further contended that although its agents had examined the appellee's books, they could not ascertain to whom or at what price the appellee had sold the Briskys' fruit, and that the appellee had never furnished any additional information on this score. The appellee maintained, on the other hand, that it had purchased the fruit from the Briskys' outright and was required to apply against their debt to the appellee only the sale price as between them, so that the price that the appellee received from subsequent purchasers was legally immaterial. The court ruled that, for the purposes of the trial, the subordination agreement contemplated sales to third persons, and not sales by the Briskys to the appellee.

The appellee's ledger sheets were introduced in evidence, showing the sums advanced and the services rendered to the Briskys, and the amounts credited to them for sales of fruit to the appellee, but giving no indication of what disposition the appellee had made of the fruit. The appellant adduced evidence that the appellee as a rule had commingled the Briskys' fruit with that of other growers and had shipped the commingled fruit to the appellee's various branches throughout the country, although in a few instances the appellee sold the fruit to outsiders. The appellee's accountant testified that it was virtually impossible to trace the ultimate sales of the Briskys' fruit made by the appellee's branches.

The court ruled that since the appellee had received mortgaged property with knowledge of the appellant's lien, it was under an obligation to show its disposition and the amount received therefor; and that if by mixing the Briskys' fruit with other fruit and shipping the combined fruit to branch houses the appellee rendered it impossible to trace the Briskys' fruit or ascertain its selling price, the appellant might prove its fair market value at the date of such shipment. The court further ruled that unless adequate evidence was adduced by the appellee as to

when those shipments were made, the market value of the fruit as of one week after the appellee had received it might be proved, but that the appellee might negative such evidence by other factors.

Records brought to court by the appellee's officers were then introduced, showing shipments and sales of Briskys' fruit made by the appellee. These accounted for 298 boxes out of a total of 1,137 boxes of the Brisky apples delivered to the appellee.

Counsel for the appellant demanded that the appellee produce records to account for the disposition of the remaining apples. Counsel and the court then engaged in a colloquy that we quote below in full, since it indicates "the state of the case" at that point and consequently has bearing on the question of whether or not the court's exercise of discretion was sound:

"Mr. Erickson: At this time I would like to make a demand those records be produced in Court.

"Mr. Sanders: In that connection I better be sworn in regard to that demand. If the court will take my oral statement without oath. That subpoena was served on us Saturday evening. I, personally, and the manager went up there Sunday hunting records—piles and piles of boxes there. There were records of some 2500 cars since this business, and how many before I don't know. We spent that much time in endeavoring to do it, and these are all the files we could find. I was back up there again Monday and hunting records, and this is all we were able to get in the limited time. And I submit for counsel at this stage of the proceedings to come in and make a demand is absolutely unreasonable. This case has been set for months. He had all the opportunity in the world to do it, and he can't come in at this late date and serve a subpoena that is humanly and physically impossible to comply with.

"Mr. Erickson: I wish to make this statement. I talked to Mr. Sanders on the 15th of April and told him exactly what we wanted to have for this case and that a subpoena would be prepared and served—

"The Court: You can't make a demand like this binding on anybody. You can't issue a subpoena saying 'Bring in all your records.' There is some responsibility on people starting lawsuits to know what they

want. I will refuse this demand on the ground it wasn't made timely."

The appellant then attempted to qualify a Government agent as an expert on the market value of the fruit during the period in question, but was unsuccessful because the court ruled that the witness could not base his reply solely on reports issued by the Bureau of Agricultural Economy, Department of Agriculture, as to sales of fruit in the vicinity during that time. With commendable candor, counsel for the appellant conceded that the court's ruling was correct: "I submit the witness doesn't seem to be qualified. I am frank in stating to the Court I don't believe from his answer he is qualified to state the extent of the use of that report in the community of Wenatchee, therefore I take it he should not be permitted to answer any further questions to do with the market price."

Apparently realizing that the appellant's case was about to collapse, as a last resort counsel called to the stand the manager of the appellee, who testified that the Bureau's reports "have no value", and who was thereupon quickly dismissed from the witness chair. The appellant's attorney then called another witness, who stated that he had not used the reports during the years in question and who consequently was likewise promptly excused.

At this juncture, counsel for the appellant moved for a voluntary nonsuit, with the privilege of reopening the case "at another term of court", arguing that the inability of the Government's witness to qualify as an expert on market values was a surprise and not due to lack of diligence; that the Government's inability to bring in other witnesses at that time prevented arriving at an adequate formula in what was essentially a test case; that the case is far-reaching and affects the apple crop as well as the methods used by the Government in subordinating its lien to other lenders; and that in fairness to the growers as well as to the appellee, a proper trial of the matter should be had.

The appellee opposed the appellant's motion and moved for dismissal with prejudice because the Government had not adequately prepared its case and had put the appellee to tremendous expense. Counsel argued that the appellant had no right to be surprised at the testimony of one of its own employees, especially

one that had worked on the case from its very inception.

The court then stated: "I wouldn't consider granting the motion without some substantial payment of costs. Costs are not taxable against the United States. I would just say you couldn't start another lawsuit until the Government has paid something————"

The Court ruled that if this suit involved only one instead of twenty causes of action, the appellant's motion to dismiss without prejudice would be denied and the case decided on its merits, but since the case related to a matter of general policy and governmental assistance to growers and warehousemen, the appellant's motion would be granted, on condition that the appellant pay the appellee $250 within 45 days to reimburse it for its expense in preparing for trial; otherwise the entire complaint would be dismissed with prejudice. In response to the appellee's objection that the figure was too low, the court admitted that it was impossible to arrive "at the proper figure of just compensation," and that $250 was "more or less an arbitrary figure" picked "out of the air", but added that if the appellee had won the case on its merits, it would have had no compensation at all. The court also admitted that "it's impossible to determine how much the defendant has been compelled to spend as the result of preparation of this case".

An order of dismissal was then entered on April 29, 1942, reciting that if the appellant should pay the appellee $250 within 45 days "to reimburse it for funds expended in the preparation of its defense", the action would be dismissed without prejudice; otherwise it would be dismissed with prejudice.

On June 25, 1942, the appellee moved for dismissal with prejudice, upon an affidavit that the appellant had failed to pay the $250. On July 2, 1942, the appellant moved for a continuance to allow further introduction of evidence as to market value at the time of conversion, or alternatively, for an order dismissing the action without prejudice. No specific amount of time was requested in the motion for a continuance.

On July 6, 1942, the court entered findings of fact and conclusions of law, holding that the Briskys owed the appellant $770.11 on a promissory note secured by a first mortgage lien on their 1937 fruit

crop; that the appellant had subordinated its lien to the appellee to secure additional advances to the Briskys by the appellee, such subordination being limited to 60 cents per box on all fruit sold; that the appellee had advanced funds and rendered services to the Briskys to aid in financing the production, handling, and marketing of their 1937 fruit crop; that the appellee received 1,137 boxes of apples from the Briskys and converted 298 boxes thereof to its own use; and that no proof was submitted as to whether the appellee converted any of the remaining boxes or as to the value of the fruit converted by the appellee. The conclusion of law was that the action should be dismissed with prejudice. On the same date the court entered a judgment reciting that the appellant had failed to comply with the preliminary order of April 29, 1942, and dismissed the entire complaint with prejudice.

From that judgment, the present appeal has been taken.

■ In the first place, the appellant contends that the court below lacked authority to condition the right of the United States to dismiss its action without prejudice upon the payment of $250 as reimbursement to the appellee for the expenses incurred in the preparation of the latter's defense. Based upon the familiar doctrine that the United States is immune from costs in the absence of a statute to the contrary, this objection is well taken. Although it is true that the Court did not tax the United States for "costs" eo nomine, it is equally clear that the judge below intended the award of $250 to stand in lieu of costs, for, as we have seen, he remarked, "I wouldn't consider granting the motion without some substantial payment of costs." Elsewhere the learned judge used the following language: "Now the rule is the Government is not responsible for costs, and there is no way the Government can be compelled to pay *costs in the ordinary sense of the word.*"

So in an effort to avoid the use of the troublesome expression "costs in the ordinary sense of the word," the court below variously termed the allowance of $250 a "just compensation" or a "reimbursing" of the appellee "for funds expended in the preparation of its defense."

Reading the entire record on this subject, we are convinced that the learned judge, aware that a palpable injustice would be done to the appellee if there were no award of costs in connection with a dismissal without prejudice, attempted to do indirectly what he well realized that he could not do directly. It is elementary doctrine that, however well-intentioned, such an expedient is not permissible.

■ But the error was harmless, for it was cured by the later action of the court in dismissing the case with prejudice. The latter action, as we shall presently see, was well within the sound discretion of the trial judge. The law can therefore see both the invalid condition and the dismissal without prejudice predicated thereon, as a blank piece of paper, which was superseded by the later and proper judgment.

■ As we read the record, we are struck by the frequent expressions of disapproval by the trial judge regarding the lack of preparation shown in presenting the appellant's case. Since a trial court's evaluation of the parties' diligence carries almost commanding weight, we quote a few of these expressions, as bearing upon the question of the sound exercise of discretion:

"It seems to me with all the facilities of the United States Government in preparing this case for trial over a period of two or three years they could have gotten somebody in Wenatchee qualified to testify from his knowledge what the market price was at that time."

"This case has been pending a long time. It should have been prepared. The defendant has been put to the expense, and should not have been put to the expense . . . These young men [witnesses for the appellant] went out to examine the books, and did not examine the books."

"With all the facilities the Government has at its disposal and all the people in the Wenatchee Valley competent to testify as to market value, it certainly isn't justifiable for the Government to come in with one witness and say, 'I'm sorry but we can't prove it and therefore give us a voluntary dismissal and we'll start all over again', and put the defendant to the expense of preparing it again. I will say, frankly, if this case is started again, and the trial starts out the same way this has without any preparation, it just isn't going to trial."

Nevertheless, because of the importance of the case and the services that the appellant has rendered to the fruit industry of the Wenatchee Valley, the trial judge strained a point in the appellant's favor—even to the length of at first dismissing the case without prejudice and attaching an illegal condition to the dismissal. Had the litigation been of an ordinary character, the lower court, as we have seen, would have denied the motion to dismiss without prejudice, and would have passed upon the merits.

Nor was the final dismissal with prejudice, though it came tardily, an abuse of the sound discretion of the court.

In the instant case, both a voluntary nonsuit and continuance were requested at different times. Since the rules governing the exercise of the trial court's discretion as to each type of request are the same, we shall consider both motions together.

■ It is well setttled that the granting of a continuance is a matter that lies within the sound discretion of the court that hears the case. Both the rule itself and its rationale were succinctly stated by Mr. Chief Justice Taney in the leading case of Thompson v. Selden, 20 How. 194, 61 U.S. 194, 198, 15 L.Ed. 1001: "And as regards the motion to continue the case, it has often been decided by this court, that the refusal of an inferior court to continue a case to another term cannot be assigned for error here. Justice requires that the granting or refusal of a continuance should be left to the sound judicial discretion of the court where the motion is made, and where all of the circumstances connected with it, and proper to be considered, can readily be brought before the court."

A similar doctrine is applied even where surprise is alleged. In Preferred Accident Insurance Company v. Patterson, 3 Cir., 213 F. 595, 598, the court said: "In other words, the defendant was appealing to the discretion of the court for a continuance on the ground of surprise, and, unless the discretion was abused we should not interfere with the ruling."

In the recent case of Hicks v. Bekins Moving & Storage Co., 9 Cir., 115 F.2d 406, 409, this court quoted with approval the following language in the decision of Inderbitzen v. Lane Hospital, 17 Cal.App. 2d 103, 106, 61 P.2d 514: "The duty rests upon the plaintiff at every stage of the proceeding to use diligence and to expedite his case to a final determination, and unless it is made to appear that there has been a *gross* abuse of discretion on the part of the trial court in dismissing an action for lack of prosecution its decision will not be disturbed on appeal." [Italics our own.]

In the same case, this court held that it was not necessary for the opposing party to show "specific impairment of their defense, because the law will presume injury from unreasonable delay."

■ Lack of preparation is not a ground for obtaining a continuance, unless there is a valid reason for such lack. In 12 Am. Jur., Continuances, § 9, p. 454, the rule is thus stated: "Where it appears that a party has not had time to make adequate preparation for trial, a continuance will be granted, but a party who might have been prepared for trial will very seldom be granted a continuance because he is not prepared, and certainly in such a case the exercise of the court's discretion will not be disturbed." See also Id., § 28, p. 469; Refior v. Lansing Drop Forge Co., 6 Cir., 124 F.2d 440, 444; Girard Trust Co. v. Amsterdam et al., 5 Cir., 128 F.2d 376, 377; Sweeney v. Anderson, 10 Cir., 129 F.2d 756, 758; Congdon v. Aumiller, 79 Wash. 616, 621, 140 P. 912; Kubli v. Hawkett, 89 Cal. 638, 642, 27 P. 57.

■ The appellant assures us that it "now has available competent evidence as to the market value of the 1937 crops." This preparedness comes tardily. In Hicks v. Bekins Moving & Storage Co., 9 Cir., 115 F.2d 406, 409, we said: "Moreover, an order of dismissal may be granted, notwithstanding the plaintiff has been stirred into action by the impending dismissal, for subsequent diligence is no excuse for past negligence."

■ Finally, the appellant insists that "In view of the directions of the court that the third cause of action be tried as a test case and that the judgment therein be applicable to the other nineteen causes of action, the adjudication of the plaintiff's right to recover for the conversion found in the third cause of action, even if accompanied by an award of only nominal damages, would have been of definite advantage to the Government by establishing a similar right of recovery in the other nineteen causes of action."

In evaluating this contention of the appellant, it should be remembered that the

appellant offered no objection, so far as the record shows, to the court's ruling that the third count should be "tried as a test case." In its brief, the appellant itself terms that count "typical". The court below, in view of the lamentable failure of proof of damages as to the third count, had every reason to believe that there would be a similar failure as to the other counts. In other words, the failure of proof at that time was probably likewise "typical". Certainly the appellant could not insist that the court below should try the case on each of the other nineteen counts, with the prospect of having to award only nominal damages as to each count.

A similar argument was thus disposed of in the case of Partridge v. St. Louis Joint Stock Land Bank, 8 Cir., 130 F.2d 281, 286: "Appellant has laid great stress in argument upon his claim that he is suing for the benefit of 'an exceedingly large number' of members of a class of persons, namely, the owners of outstanding bonds owed by the St. Louis Joint Stock Land Bank, *aggregating some eighteen million dollars in amount*. His own interest is only the ownership of such bonds in the amount of four thousand dollars. As the bonds will be paid in large part in any event, his own interest in the action is obviously of little value. *But the court has the duty to see to it that even a class suit shall be prosecuted with due diligence. The defendants have rights as well as the members of the class for whom the suit is brought and the court must remain an impartial arbiter between the opposed parties. It must properly fix the responsibility to prosecute the suit and it may not deny defendants in the action the rights which inure to them upon a failure to prosecute.*" [Italics our own]

The plain fact of the matter is that the appellant's case was not properly prepared; and, in the language of the trial court, "it should have been prepared." The appellant admitted lack of preparation when its counsel informed the court that "certain other witnesses"—whose identity was not specified—could not be brought in, and asked for a voluntary nonsuit. It cannot complain, under all the circumstances of the case, if the court finally decided to dismiss the case with prejudice.

We have carefully examined the record, keeping in mind these various contentions of the appellant. We find that the trial judge was guilty of no abuse of discretion—either "gross" or slight.

Affirmed.