Edwin Jones MONTGOMERY, Sr. and Dorothy Scott Montgomery, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 20451.

United States Court of Appeals Ninth Circuit.

Oct. 14, 1966.

Rehearing Denied Nov. 14, 1966.

Robert D. Platt, Johnston & Platt, Oakland, Cal., for petitioners.

Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Crombie J. D. Garrett, C. Moxley Featherston, Attys. Dept. of Justice, Washington, D. C., for respondent.

Before KOELSCH and ELY, Circuit Judges, and FOLEY, District Judge.

ELY, Circuit Judge:

The Tax Court, without a written opinion, granted the Commissioner's motion to dismiss a petition for redetermination of income tax deficiencies. It also denied a motion to set aside the order of dismissal. The petitioners, husband and wife,[1] seek review, invoking our jurisdiction under 26 U.S.C. § 7482.

The noticed deficiencies were for the taxable years 1957, 1958, 1959, and 1960. The Commissioner's notice of his determination was mailed on December 12, 1963. The taxpayer, within the prescribed ninety-day period, filed his petition for redetermination with the Tax Court on March 12, 1964. Thirty-five days thereafter, on April 17, 1964, the Commissioner moved that the petition be dismissed for taxpayer's failure properly to prosecute. The taxpayer amended his petition, and at a hearing held on May 27, 1964, the Tax Court held that the petition remained defective and ordered that an adequate amended petition be filed not later than August 20, 1964, or that taxpayer, on August, 26, 1964, show cause as to why the motion to dismiss his petition should not be granted. On August 18, 1964, the amended petition was filed. The Commissioner answered on September 17, 1964, and on December 30, 1964, the case was set to be heard in San Francisco, California, on April 5, 1965.

On March 1, 1965, the taxpayer filed a written motion that the hearing be continued to the Fall Session of the Tax Court. The declared grounds therefor were the representation that the obligation of taxpayer's employment prevented his taking the necessary time to travel to three cities and obtain records with which to support deductions which had been rejected in the determination of the deficiencies.

In his original petition, the taxpayer had averred that "The normally available records to substantiate all of the items disallowed were destroyed by fires." The Commissioner, in resisting the motion for continuance, pointed to that which he believed to be inconsistent in the later representation that substantiating records, located in Tucson, Arizona, and Sacramento, California, were extant.

The Tax Court denied the motion for continuance and reset the hearing for April 7, 1965.[2] On that day, the hearing commenced. After the taxpayer had testified at length, the Tax Court was of the view that he had presented "not one iota of evidence" to support the disputed items of deduction. His counsel was reminded that the burden rested upon the taxpayer, whereupon the motion for continuance was orally renewed. It was denied, and the taxpayer refused to attempt to produce further evidence. The court invited additional explanation for the apparent lack of diligence in preparation, and taxpayer's counsel offered in excuse that the demands of his client's employment had been all consuming and that taxpayer believed that the times which had been fixed for the production

---

1. The petitioning husband will be called taxpayer. His wife is a party only because she filed income tax returns with her husband jointly.

2. In denying the motion for continuance, the court stated:

"I am going to hold the case for trial. I want you to communicate with him. I will try to be as generous as I can in setting a time that is convenient to him and you but I think we have got to move this case. It has become very complicated here with motions to dismiss, default, renewals, amended petitions, the statement here is that simply the man is too busy to come down here. That is what it amounts to. He has been notified since last December that this case is going to be set today and it is up to him to make arrangements. We can't set it for call and come out from Washington—I come out and bring my Clerk—and still somebody isn't ready. It is up to him to get his papers together or confer with the Government to stipulate, if he can stipulate, and settle what he can. But I think we have got to have a day of reckoning, and I think maybe it is here. So I am going to hold the case for trial.

"I would be glad to have a suggestion from you if we could set it toward the end of the week, but I would like to set it as early as possible."

of records were too restrictive. The Commissioner then orally moved that the petition be dismissed for lack of prosecution. On April 15, 1965, the Tax Court granted the motion and sustained the determination of deficiencies.

The taxpayer moved to set aside the dismissal, supporting it with an affidavit in which he averred, generally, that he had suffered a severe financial loss in 1950, that all his time in the intervening years had been expended in efforts to regain his former economic position, that a fire had destroyed some of his records, and that it had thus been impossible for him to obtain the records to support his claims.

The motion was denied on May 12, 1965, whereupon there followed the petition which is before us.

█ The grounds which were set forth in support of the motion to vacate the order of dismissal were essentially the same as those which are claimed to have required that the Tax Court grant taxpayer's motions for continuance. If the denials of a continuance were justified, then there is no sound basis for the attack upon the order of dismissal. There is inherent power in a court, acting within the "permissible range" of its discretion, to dismiss a civil action for lack of prosecution. Link v. Wabash Railroad Co., 370 U.S. 626, 633, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

█ Motions for continuances are addressed to the sound discretion of a court. United States v. Pacific Fruit & Produce Co., 138 F.2d 367 (9th Cir. 1943). That actions taken upon them should properly rest upon the exercise of judicial discretion precludes the application of precise, inflexible rules. It therefore becomes necessary to review certain facts which were properly to be considered by the Tax Court.

█ The taxpayer has earned two college degrees. He is an engineer. He has been employed as a teacher and has given instruction in mathematics. After graduating from college in 1936, he amassed a fortune of a quarter of a million dollars within ten years. In 1950, he suffered a severe reverse in his financial life. Since that time, he has, according to his testimony, "habitually worked nights and weekends." He has worked in many areas of employment, including, as stated by his counsel, "as a sort of freelance engineer or salesman." It was in connection with his "freelance" activities that the taxpayer claimed business expenses which the Commissioner disallowed.[3] His deduction of relatively large amounts of business expenses resulted in substantial claims of business losses. In his regular "full-time" employment, the taxpayer earned an average amount of $12,000 for each of the years 1950–1960. He voluntarily paid federal income taxes of slightly over $800 for all of these years. From his side employments in these years, he reported less than $50 of income and more than $5000 in expenses.[4]

The taxpayer was no stranger to tax obligations and practices of the Internal Revenue Service. There had been a dispute, eventually adjusted by compromise, involving his income tax obligations for the years 1952, 1953, 1955, and 1956.

---

3. The Commissioner also disallowed other deductions which taxpayer did not support with substantiating evidence, including (1) depreciation on rental property, (2) expenses for repairs, (3) a loss resulting from fire, (4) losses resulting from theft, (5) a loss resulting from an automobile accident, and (6) a loss of $31,500 claimed to have resulted from the decline to worthlessness of the value of a number of bonds.

4. The taxpayer claimed to have difficulty in remembering the places where he had been engaged in "free-lance" employment and the times when he had done such work. Said his counsel to the court, "Your Honor, may I just say that Mr. Montgomery has worked at a great many places and for a great many different people over the course of the years in question, and one of the problems we have is that he simply cannot recall now exactly what dates he worked and exactly what places."

The present dispute has been pending since November, 1959, when the investigation of the Internal Revenue Service began. For over four years, until the notice of deficiency was mailed on December 12, 1963, agents of the Service had sought to obtain evidence to substantiate the taxpayer's claims. On April 4, 1961, the Service wrote the taxpayer a letter which pertained to the need for the substantiating evidence. The taxpayer answered the requests in a series of letters, one of them written on July 15, 1962. Among other comments, he represented that his records had been burned, but that, with time, he would be able to produce records which would support his position. He has never done so, and when his first motion for continuance was filed on March 1, 1965, there had elapsed almost four years since the Service had written the taxpayer concerning substantiation of his claimed deductions and nearly three years since the taxpayer had first replied in writing that he would furnish records at some later time.

From the foregoing facts, we conclude that the petitioner's contention that the Tax Court abused its discretion approaches frivolity. In permitting the taxpayer twice to amend his petition for redetermination, in listening to testimony without pointed relevance, and in continuing to invite explanation for manifest neg-

lect, the court exhibited a measure of patient courtesy which was beyond its judicial obligation. It had ample justification for believing that the taxpayer had pursued a studied course of defiance of the government and its taxing authorities.[5] If a substantial body of Americans displayed the taxpayer's disdainful attitude toward tax obligations, our government would be rendered powerless to provide the service and protection which its citizens have come to expect and enjoy. In seeking to impose more delay upon that which his own lack of responsibility had already created, the taxpayer urged the Tax Court, in effect, to confer upon him a benefit which nearly all those who support the nation cannot enjoy and which they are usually too proud and respectable to seek.

■■ "In the conduct of any judicial or quasi-judicial hearing, reasonable discretion must be vested in the officer who guides the course of the proceedings." N. L. R. B. v. Phaostron Instrument & Electronic Co., 344 F.2d 855, 858 (9th Cir. 1965). In the absence of a strong showing by the litigant who charges that such discretion has been abused, the charge should be rejected. Here, the overwhelming strength in the dispute is with the Tax Court.

Affirmed.

---

5. The Tax Court characterized some of the allegations in the taxpayer's original petition for redetermination as "vituperations against people in the revenue service." The taxpayer alleged, inter alia, that

"(A) The actions by the Commissioner in the errors cited above have been arbitrary, unreasonable, capricious and an abuse of the powers, duties, and discretion of the office.

"(D) The Commissioner has exploited the misfortunes of the Petitioners by demanding that they travel hundreds of miles to discuss these returns when the acting agents of the Commissioner were fully aware that such expenditures of time and money served to reduce the time

and money available to the petitioners in obtaining substantiating evidence.

"(E) The Commissioner is further seeking to exploit the misfortunes of the Petitioners by forcing them into litigation for which they do not have the means of obtaining legal counsel and assistance. * * *

"(F) The Commissioner is deliberately wasting the time of the Court and the time and money of the Petitioners and the time and money of the Government by forcing the Petitioners into unnecessary litigation.

"(G) An agent of the Commissioner has made untrue and derogatory statements concerning Petitioners, in writing, to Senators and Congressmen."