LOWELL G. ANDERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
ANDERSON v. COMMISSIONER
Docket No. 4179-76.
United States Tax Court
T.C. Memo 1978-444; 1978 Tax Ct. Memo LEXIS 75; 37 T.C.M. (CCH) 1847-10; November 6, 1978, Filed Lowell G. Anderson, pro se. John D. Moats, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in Federal income tax and additions to tax against petitioner as follows: Taxable
Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654(a)
1972
$ 4,929.14
$ 2,464.57
$ 147.10
1973
4,937.22
2,468.61
157.98
*76 The issue for our decision is whether petitioner is liable under section 6653(b) for fraud penalties for the taxable years 1972 and 1973. FINDINGS OF FACT None of the facts in the instant case are stipulated. Pursuant to Rule 90, Tax Court Rules of Practice and Procedure, respondent in his Request for Admissions, requested that petitioner admit to facts as set forth in the request. Petitioner refused to respond to this request and respondent, by way of oral motion at the time of trial, moved that certain facts be deemed admitted. An appropriate order was entered granting respondent's motion. The admissions and exhibits pursuant to such order are incorporated herein by this reference. Mr. Lowell G. Anderson (petitioner) resided in Casper, Wyoming at the time he filed his petition in the instant case. During 1969 petitioner and his brother purchased a printing business (Kintzel Blue Print, Inc., hereinafter referred to as Blue Print) in Casper, Wyoming. They each owned 50 percent of the stock of Blue Print which operated as a subchapter S corporation. Petitioner filed proper Federal income tax returns for the taxable years 1969 through 1971 as he had prior to the *77 purchase of Blue Print. These returns included schedules which reflected business income, retal income, investment credit computations, long and short-term capital gain computations, income averaging and self-employment computations. In addition, petitioner personally signed the Federal income tax returns of Blue Print for its taxable year 1970. Petitioner signed the Employer's Quarterly Federal Tax Return of Blue Print for the period ended June 30, 1971. Respondent conducted an audit of petitioner's tax returns for the taxable years 1965, 1966 and 1967. This audit commenced during 1969. The audit showed that petitioner had additional unreported income of over $6,000 for 1966, that he deducted over $3,000 twice on the same return for 1966, and that he had additional unreported income of over $11,000 for 1967. Petitioner conceded that the adjustments to the returns were correct. Following the audit petitioner agreed to pay monthly installments of $100 to satisfy the deficiencies which related to the determinations of respondent. Petitioner paid $100 per month from April 6, 1971 until March 20, 1972. He then stopped making the monthly payments. During this time (March 1972) *78 petitioner became actively involved in protesting the overall application of the Federal tax statutes. He published a monthly magazine entitled We the People. The magazine contained articles, written by him and others, which characterized the Internal Revenue Service as tyrannical. By August 1972 petitioner became the chairman of the Wyoming Tax Revolution and in his capacity as chairman he organized and coordinated seminars, workshops and lectures for Wyoming tax protesters. He openly stated that it was his duty to challenge and resist "despotism and tyranny." In furtherance of this petitioner stated that he intended to slow down the "intentional and reprehensible" acts of governmental officials. He challenged any representative of the Internal Revenue Service to a debate on the issue of the legality of the Internal Revenue Code and he took the position that their refusal to participate in such a debate was tantamount to an admission that the Internal Revenue Service did not have the right to exist. In this regard petitioner advocated that the Internal Revenue Code, in its entirety, was in violation of the Constitution of the United States. Petitioner did not file Federal *79 income tax returns for the taxable years 1972 and 1973. For the taxable year 1972 he submitted page 1 of Form 1040 without reporting income, deductions or credits. Petitioner signed the form after excising the provisions for signing under penalties of perjury. He listed his occupation on the form as "Gestapo Stopper" and attached the following statement to the form: THE GESTAPO IS ALIVE AND WELL AND LIVING UNDER THE NAME OF THE IRS, THIS FORM IS PROOF. Any information furnished beyond what is on this form could only be given after a grant of immunity under the Miranda Warning and 5th Amendment to the U.S. Constitution. Confidential information can never be given pursuant to the 4th Amendment to the U.S. Constitution. My request for immunity was turned down by Herr Evans (local Gestapo) and Herr Walters (national Gestapo).
The Damnable International Bankers have robbed me of all my wealth and left me with nothing but green stamps. I will support my country and I will support the Constitution, but I will not support the treasonious [sic] traitors who intend to destroy it. I am forever free of gestapo leaches [sic]--for I have willed it. Anything in the Gestapo Code *80 to the contrary notwithstanding. My allegiance is to my God, my country, my flag, and the patriots, so here's to them and to hell with the bureaucratic leaching [sic] gangsters who are out to destroy these I will not waste anymore time here, for arguing with someone who has renounced the authority of reason and holds all humanity in contempt is like administering medicine to the dead, so I will end it with this.--Get a decent job, produce something, instead of leaching [sic] off the production of others!! On October 12, 1973, petitioner filed a Form 1040 as an "Amended Return" for the taxable year 1972 in which he asserted his objections relating to possible self-incrimination. He signed this form in the same manner as he had previously (i.e., after excising the provisions for signing under penalties of perjury). The form, as signed, did not reflect any tax credits or deductions. Petitioner estimated that he received five silver dollars and 1,500 Federal Reserve Notes as income during 1972. For the taxable year 1973 petitioner submitted a Form 1040 in which he stated that he received no wages or other compensation and he estimated that he received five silver dollars *81 as income other than wages, dividends and interest. The form reflected petitioner's signature in the same manner as the Forms 1040 submitted for the taxable year 1972. On June 12, 1973, Mr. Robert S. Terry, director of the Ogden Service Center, Ogden, Utah, notified petitioner, by a letter, that the document filed as an income tax return for 1972 was not acceptable as a Federal income tax return. A similar letter was mailed to petitioner on October 1, 1974, notifying petitioner that the form filed for the taxable year 1973 did not constitute a Federal income tax return. Petitioner acknowledged the receipt of these letters. From 1969 to June 1972, Blue Print filed employment tax returns which showed that income taxes were withheld from salaries paid to petitioner. Petitioner took himself off a salary, quit filing (Form 941) Employer's Quarterly Federal Tax Returns, and stopped reporting, on behalf of Blue Print, any withholding from his salary after the quarter ended March 31, 1972. For the taxable years 1972 and 1973 Blue Print filed "amended returns" which reflected no income, expenses or credits from which a tax could be computed. Petitioner signed both of those statements. *82 [2]
In the latter part of 1973, respondent instituted a second audit. During this audit respondent investigated the procedure by which petitioner received a salary from Blue Print. Respondent contacted the accountant of Blue Print for the purpose of obtaining the company's books and records. The accountant was unable to assist respondent because petitioner had taken the books and records sometime during March 1972 and no books and records were maintained by Blue Print after petitioner removed them from the possession of the accountant. After March 1972 petitioner changed Blue Print's method of paying his salary by check. Initially petitioner received his salary in the form of a check payable to petitioner. The checks payable to petitioner during 1972 amounted to $3,318. The checks payable to cash and endorsed by petitioner during 1972 amounted to $9,580. No checks were drawn payable to petitioner during 1973. Checks made payable to cash and endorsed by petitioner amounted to $26,400 during 1973. For the taxable year 1973 petitioner made no *83 deposit in his personal checking account. Respondent was able to make these calculations for the taxable years 1972 and 1973 by examining the bank records of petitioner and Blue Print. This procedure was necessary due to petitioner's refusal to cooperate and make his books and records available to respondent. Petitioner further refused to provide any books and records of Blue Print. Before respondent examined the bank records of petitioner and Blue Print, pursuant to a summons under section 7602, petitioner instituted a suit seeking to enjoin the bank's compliance with respondent's summons. The United States District Court for the District of Wyoming dismissed petitioner's suit. [3] Following the dismissal of his suit for injunctive relief, petitioner threatened the bank with a law suit if the bank complied with respondent's summons. Pending the trial of the instant case, petitioner refused to respond to a request for admissions and refused to produce any records of his income or expenses pursuant to a subpoena issued by respondent. Petitioner also refused to appear to give testimony before *84 this Court after he had been served with a subpoena and had been contacted by telephone by both respondent and the Clerk of the Court. Following the examination of the bank records respondent calculated petitioner's undistributed share of taxable income from Blue Print to be $17,676.52 and $19,195.75 for the taxable years 1972 and 1973, respectively. Based on his investigation and calculations the Commissioner, in his statutory notice of deficiency, determined that petitioner failed to report the following amounts: TAXABLE YEARS
1972
1973
Undistributed taxable income
of Blue Print
$ 17,676.52
$ 19,195.75
Salary payments from Blue Print
1,500.00
In addition, the Commissioner determined that the failure to report the reported amounts for the taxable years 1972 and 1973 was due to fraud. Consequently, the Commissioner asserted the 50 percent addition to tax for those taxable years as provided by section 6653(b). Finally, the Commissioner determined that petitioner underpaid his estimated tax for the taxable years 1972 and 1973 and therefore asserted the addition to tax provided by section 6654. ULTIMATE FINDINGS OF FACT 1. Petitioner *85 realized taxable income as follows: TAXABLE YEARS
1972
1973
Undistributed taxable income
of Blue Print
$ 17,676.52
$ 19,195.75
Salary payments from Blue Print
1,500.00
2. Petitioner underpaid his income tax for the taxable years 1972 and 1973 and such underpayment was due to fraud. 3. Petitioner underpaid his estimated tax for the taxable years 1972 and 1973. OPINION Petitioner has the burden of proof with respect to establishing respondent's determination of deficiencies and additions to tax under section 6654 to be erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioner failed to make assignments of error and statements of fact concerning the adjustments contained in the statutory notice of deficiency. Respondent submitted a Motion for More Definite Statement or to Strike.Petitioner refused to submit a proper amended pleading in accordance with Rule 50, Tax Court Rules of Practice and Procedure, and this Court struck the assignments of error and allegations of fact from the petition thereby limiting the issues remaining for decision as to whether petitioner *86 is subject to the fraud penalty under section 6653(b) and the penalty for underpayment of estimated tax under section 6654. Petitioner refused to appear at the time of trial and offered no proof to show that respondent's determination was erroneous as to the addition to tax under section 6654. Therefore, respondent's determination as to that addition to tax is sustained. Respondent has the burden of proof on the issue of fraud. His burden is satisfied only upon a showing by clear and convincing proof. Sec. 7454(a), Internal Revenue Code of 1954; Rule 142(b), Tax Court Rules of Practice and Procedure; Ruidoso Racing Association, Inc. v. Commissioner,476 F.2d 502 (10th Cir. 1973), affg. a Memorandum Opinion of this Court. The evidence presented by respondent, which is uncontradicted due to petitioner's refusal to appear, leads to the inescapable conclusion that petitioner's failure to report income from Blue Print for the taxable years 1972 and 1973 was due to fraud and in deliberate definance of the law.
Prior to 1972 petitioner was aware of his legal obligation to file a Federal income tax return and pay Federal income tax. For the *87 taxable years 1966 through 1971 petitioner timely filed his returns and paid the tax. Following an audit by respondent during 1969 (which resulted in the determination of a deficiency for the taxable year 1967), petitioner agreed to pay additional tax by making monthly payments in the amount of $100. Petitioner made the first payment during April 1971 and continued to pay until March 1972 when he stopped making them even though the deficiency had not been satisfied. During this time petitioner embarked on a course of conduct designed, by his own admissions, to slow down the "intentional and reprehensible" acts of the Internal Revenue Service. He published a monthly magazine entitled, "We the People," which contained articles characterizing the Internal Revenue Service as tyrannical. Petitioner became the chairman of an organization called the Wyoming Tax Revolution in August 1972 and in his capacity as chairman he organized and coordinated seminars, workshops and lectures which were conducted for the purpose of defying the application of the Internal Revenue Code. Petitioner declared that the Internal Revenue Code was illegal in its entirety and that this Court had no legal basis *88 for its existence. In conjunction with petitioner's involvement with certain "tax protestors," petitioner devised a scheme which clearly demonstrates a fraudulent intent to evade tax. Beginning in the spring of 1972 petitioner took possession of the books and records of Blue Print from the corporation's accountant. Following the removal of the books and records, petitioner failed to keep any records which reflected the financial activities of Blue Print or himself. He changed the corporate method of paying his salary by directing Blue Print to issue checks payable to cash in lieu of his salary. Petitioner would then endorse the checks and reduce them to cash rather than deposit the checks in his personal checking account. He stopped using his personal checking account in 1972 and failed to make any estimated tax payments after he caused Blue Print to stop withholding taxes from salary and wage payments to him. For the taxable years in issue petitioner concealed his source and amount of income by refusing to file a proper Federal income tax return. Instead, petitioner filed a Form 1040 which reflected no income, deductions or credits and was signed by petitioner only after the *89 provisions for signing under penalties of perjury were excised. He filed these forms under the guise of asserting his constitutional rights and declaring himself a gestapo stopper by occupation and "forever free of gestapo leaches [sic] who enforced the Gestapo Code." In furtherance of this scheme petitioner filed Forms 1120S on behalf of Blue Print for its taxable years 1972 and 1973. These forms, much like the forms he personally filed, did not reflect Blue Print's income, deductions or credits. Petitioner continued this course of conduct during the audit conducted by respondent during the latter part of 1973. He refused to cooperate in any fashion during the audit with respect to furnishing respondent the financial records of Blue Print.Consequently, respondent sought to reconstruct petitioner's taxable income by examining the bank records of Blue Print. Petitioner attempted to enjoin the bank from complying with the summons issued by respondent. This effort failed when the Federal District Court of Wyoming, in which the suit was filed, dismissed the case. However, petitioner continued to threaten the bank with a suit if it complied with respondent's summons and allowed *90 him to examine the bank records. The scheme devised and carried on by petitioner, as described above, clearly and convincingly demonstrates that his failure to report income as determined by respondent was due to fraud. Moreover, it demonstrates a flagrant disregard for the judicial process in that petitioner refused to comply with a subpoena requesting his presence at the trial of the instant case. We can reasonably conclude that petitioner is more interested in obstructing the administrative and judicial processes and misleading unsuspecting taxpayers than he is in seeking a just determination of his income tax liability. [4]
"If a substantial body of Americans displayed the taxpayer's disdainful attitude toward tax obligations, our government would be rendered powerless to provide the service and protection which its citizens have come to expect and enjoy." Montgomery v. Commissioner,367 F.2d 917, 920 (9th Cir. 1966). Accordingly, we sustain respondent's determination with respect to the deficiencies in income tax and additions *91 to tax under sections 6653(b) and 6654. Decision will be entered for the Respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. The "amended return" for 1972 was signed by petitioner after the provisions relating to the penalties of perjury were excised.↩
3. Anderson v. Commissioner, 371 F.Supp. 1278↩ (D. Wyo. 1974).
4. Compare Tanner v. Commissioner,T.C. Memo 1977-183↩, which involved a tax protester from Casper, Wyoming.