WILMA G. KAUFFMAN, [1] Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent Kauffman v. Commissioner
Docket Nos. 13310-79, 13311-79, 13312-79.
United States Tax Court
T.C. Memo 1982-484; 1982 Tax Ct. Memo LEXIS 264; 44 T.C.M. (CCH) 920; T.C.M. (RIA) 82484; August 23, 1982. *264 Petitioners failed to produce books and records, failed to cooperate with respondent's auditing agent, failed to respond to respondent's discovery requests, and failed to appear for trial. Decisions will be entered against petitioners for the underlying deficiencies determined by respondent by default. Held, respondent carried his burden of proof on the fraud issue. Matthew W. Stanley, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Docket
Addition to tax
No.
Petitioner
Year
Deficiency
[3] sec. 6653(b) 13310-79
Wilma G. Kauffman
[2] 1973
$4,548.86
$2,274.43
[2] 1974
5,220.38
2,610.19
13311-79
Paul K. Kauffman
[2] 1973
5,412.86
2,706.43
[2] 1974
6,263.18
2,131.59
13312-79
Paul K. and Wilma G.
1972
7,051.23
3,525.62
Kauffman
*265 These cases have been consolidated for purposes of trial, briefing, and opinion. By orders of this Court dated April 9, 1980, these cases were dismissed for lack of prosecution insofar as they related to issues upon which petitioners have the burden of proof. The remaining issue is whether for each of the years before us petitioners are liable for additions to tax pursuant to section 6653(b) or, alternatively, whether for the taxable years 1973 and 1974 they are liable for additions to tax pursuant to sections 6651(a) and 6653(a). [4]
Because the fraud issue is primarily factual, we have combined our Findings of Fact and Opinion. Petitioners Paul K. and Wilma G. Kauffman, husband and wife, resided *266 in Seattle, Wash., at the time of filing the petitions herein. They filed a joint income tax return for the taxable year 1972 with the Internal Revenue Service, Ogden, Utah. They did not file income tax returns for the years 1973 and 1974. The 1972 return indicated that Paul was a salesman and that Wilma's occupation was that of child care. By orders of this Court dated September 14, 1979, petitioners were ordered to amend their petitions and to pay the required $10 filing fee, so as to comply with the rules [5] of the Court. See Rules 20(b) and 34. The orders further stated that if they did not comply with such orders, the cases would be dismissed and a decision in the amount of the deficiencies determined by respondent would be entered against them. Petitioners did not comply with the above orders, and on January 4, 1980, they were ordered by this Court, interalia, to either comply with such orders or to show cause why the cases should not be dismissed to the extent they related to those issues upon which petitioners had the burden of proof. A hearing with *267 respect to the order of January 4, 1980, was held on April 9, 1980. There was no appearance by or on behalf of petitioners at such hearing. In view of petitioners' failure to comply or otherwise respond to the orders of this Court, the following order, dated April 9, 1980, was entered with respect to each of the docketed cases herein: ORDERED that the Court's January 4, 1980, order to show cause in this case is made absolute and this case is dismissed for lack of prosecution insofar as it relates to those issues upon which petitioner has the burden of proof and the case shall hereafter proceed to trial for the limited purpose of determining the merits of the section 6653(b) issue with respect to which respondent has the burden of proof. Freedson v. Commissioner,565 F.2d 954 (5th Cir. 1978), affg. 67 T.C. 931 (1977); Montgomery v. Commissioner,367 F.2d 917 (9th Cir. 1966); Rechtzigel v. Commissioner, 79 T.C.     July 26, 1982). Thereafter, on May 27, 1980, respondent filed answers alleging facts upon which he relied to prove that a part of the underpayment of tax required to be shown on petitioners' returns was due to *268 fraud. Petitioners did not file replies. Respondent did not file motions under Rule 37(c) that specific allegations in the answer be deemed admitted. The deficiencies determined by respondent, and ultimately found in his favor as a result of the April 9, 1980, order of dismissal, arose out of an audit of petitioners' 1972 tax return. The auditing agent attempted to obtain petitioners' 1973 and 1974 income tax returns as well by requesting them from the Internal Revenue Service Center, Ogden, Utah. He was subsequently informed that the Internal Revenue Service had no record of petitioners' filing either a 1973 or 1974 return. From the time of the inception of the audit, petitioners were unwilling to cooperate with the auditing agent in any manner and stated to him that they were not willing to discuss the matter unless they were first granted immunity from criminal prosecution. Petitioners were subsequently informed by the Internal Revenue Service that criminal charges would not be brought against them with respect to the determined tax deficiencies for any of the taxable years in issue. Thereafter, the auditing agent wrote a number of letters to petitioners in an attempt *269 to obtain the information necessary to determine their correct tax liability for the taxable years in issue. Petitioners did not respond to those letters. Because petitioners refused to make either themselves or their records available to the auditing agent, he used the bank deposit method to determine their correct taxable income for each of the taxable years in issue. In using the bank deposit method to determine petitioners' taxable income, the auditing agent took into account all non-taxable items such as loans or gifts, as well as transfers from one bank account to another. During the course of his audit, the auditing agent identified four specific sources of income. These sources included payments from the Mini Meal Food Corp., the RHAMA Corp., and M.D. Associates, for all of whom Paul was employed as a merchandise distributor, and sales of silver bullion. With respect to the silver bullion-trading activities, respondent determined that petitioners bought and sold silver from at least three different companies: Engelhard Minerals and Chemical Corp., Superior Precious Metals Co., and Delta Smelting Co. On at least one of the silver-trading transactions, Paul requested *270 that the purchaser pay the amount owed, $29,965.76, in cash, although he ultimately accepted a Treasury check in that amount. Additionally, many of the funds received from the sales of silver could not be traced by the auditing agent into any of petitioners' known accounts. The auditing agent obtained documentary information from each of the above-noted companies in an effort to corroborate the results of his bank deposit analysis. As a result of this audit, it was determined that, together, petitioners had additional gross receipts of $43,648, $134,544, and $43,806 during the taxable years 1972, 1973, and 1974, respectively. A schedule indicating these amounts was attached to respondent's notices of deficiency. [6]
For purposes of this trial, on January 12, 1981, respondent made an informal *271 request of petitioners for information needed to determine the correctness of his deficiency determination for each of the taxable years in issue. Petitioners did not respond to this request. Thereafter, on January 30, 1981, respondent served interrogatories upon petitioners pursuant to Rule 71 and requested that they produce certain documents pursuant to Rule 72. Respondent received no answers or objections to these interrogatories, nor did he receive any of the documents requested. Subsequently, on March 17, 1981, respondent moved this Court for an order compelling petitioners to answer the interrogatories served upon them and to produce the documents requested. These motions were granted at a hearing held on April 29, 1981. No appearance was made by or on behalf of petitioners at that hearing. On May 8, 1981, respondent moved this Court to impose sanctions against petitioners pursuant to Rule 104(c), and to establish as correct his determination of additional income for each of the taxable years in issue, as indicated on schedules attached to his notices of deficiency. There was no appearance by or on behalf of petitioners at the trial. The motion was granted at the trial *272 of this case held on May 11, 1981. [7]
In a letter to this Court, dated May 4, 1981, petitioners wrote as follows: Be informed the tax court has no jurisdiction on this matter as we have demanded a jury trial under common law on issues of fact surrounding the controversy of whether we owe a tax to the United States of America or not. Therefore we will not be present at the so called hearing on May 11, 1981 as the government has adequate remedy at law to proceed. The prime issue for decision is whether for each of the taxable years in issue petitioners are liable for an addition to tax pursuant to section 6653(b) for fraudulent underpayment of income tax. In order for section 6653(b) to apply, there must be an underpayment of tax and at least a portion of that *273 underpayment must be due to fraud. [8] The underpayment of tax for each of the years in issue has been clearly established by the pleadings, the evidence offered by respondent, and orders entered by the Court. Whether fraud exists with respect to an underpayment of tax is a question of fact, and the burden is on respondent to show the existence of such fraud by clear and convincing evidence. Stone v. Commissioner,56 T.C. 213, 220 (1971); Rule 142(b). The answer to this question must be determined by an examination of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970). Fraud, within the meaning of section 6653(b), is an intentional wrongdoing with the specific intent of evading a tax believed to be owed. Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958); Mitchell v. Commissioner,118 F.2d 308, 310 (5th Cir. 1941). The required intent may be shown by circumstantial evidence and reasonable inferences drawn from the facts. Stone v. Commissioner, supra at 224; Gajewski v. Commissioner,67 T.C. 181, 200 (1976). *274 Based on the record before us, we find that respondent has met his burden of proof for each of the taxable years in issue with respect to both petitioners. Because of the sanctions imposed pursuant to Rule 104(c), and evidence offered by respondent, respondent's determination of taxable income for each of the years in issue, including the schedules attached to his notices of deficiency, is found to be correct for purposes of this case. Therefore, petitioners failed to report gross receipts in the amounts of $43,648, $134,544, and $43,806 for the taxable years 1972, 1973, and 1974, respectively. [9] As a result of these omissions, as well as certain other adjustments made by respondent, petitioners' taxable income for such years was underreported by $27,566.07, $33,042.0, and $36,223.90, respectively. Consistent and unexplained failure to report substantial amounts of income is convincing evidence of fraud. [10]Holland v. United States,348 U.S. 121, 137 (1954); Lollis v. Commissioner,595 F.2d 1189, 1191 (9th Cir. 1979), affg. a Memorandum Opinion of this Court. *275 Additionally, petitioners did not file either a joint or separate income tax return for the taxable years 1973 or 1974. They did, however, file a joint return for 1972 thereby evidencing an understanding on their part of the filing requirements. Their failure to file for the taxable years 1973 and 1974, in light of the substantial amounts of income they had during such years, is further evidence that the underpayment of the tax for each of the years in issue is due to fraud. Grosshandler v. Commissioner,75 T.C. 1, 19 (1980), on appeal (7th Cir. Dec. 22, 1981); Powell v. Grandquist,supra.And their failure to report specific items of income on their 1972 return is indicative of fraud. Smith v. Commissioner,32 T.C. 985 (1959). Additionally, the examining agent was informed that in at least one of Paul's silver transactions, he attempted to sell for cash only [11] and in other transactions checks he received could not be traced into his bank accounts. Such incidents suggest an attempt to conceal income, which is also an indicia of fraud. Gemma v. Commissioner,46 T.C. 821 835 (1966). *276 Finally, we note that petitioners have refused throughout every stage of this case to produce any of their books and records, or to cooperate in any way with respondent, or to comply with the orders of this Court, or to appear in Court to explain to the Court the reason for their failure to report their taxable income. Even the fact that they could not be afforded a jury trial in this Court would not explain or excuse their failure to report their taxable incomes, which we believe they knew they were obligated to do. All of the above factors are badges of fraud, and in light of the substantial deficiencies involved, we find that such conduct is indicative that at least a portion of the underpayments of tax for each of the years in issue was due to fraud. [12]
Based on the record as a whole, respondent's determination of additions to tax pursuant to section 6653(b) is sustained. [13]
*277 Decisions will be entered for respondent in each docket number.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Paul K. Kauffman, docket No. 13311-79; and Paul K. and Wilma G. Kauffman, docket No. 13312-79.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. Respondent determined that petitioners had not filed a return for either 1973 or 1974 and therefore determined the deficiencies in and additions to tax for such years with respect to each petitioner on the basis of married individuals filing separately. ↩
4. The alternative additions to tax were asserted by respondent in an amended answer.↩
5. All references to rules shall be deemed to refer to the Tax Court Rules of Practice and Procedure.↩
6. Since Washington is a community property State, respondent attributed one-half the income and other adjustments determined to each petitioner for the taxable years 1973 and 1974. The notices of deficiency indicated that, together, petitioners had unreported taxable income in the amounts of $27,566.07, $33,042.10, and $36,223.90 for the taxable years 1972, 1973, and 1974, respectively.↩
7. At the time of granting this motion, we declined to grant a motion by respondent for a default judgment against petitioners on the fraud issue. See, however, Rechtzigel v. Commissioner, 79 T.C.     (July 26, 1982); Doncaster v. Commissioner,77 T.C. 334 (1981); Gordon v. Commissioner,73 T.C. 736 (1980); Simmons v. Commissioner,73 T.C. 1009↩ (1980).
8. See Adcock v. Commissioner,T.C.Memo. 1982-206↩.
9. The figures for the taxable years 1973 and 1974 reflect the total amounts determined by respondent for both of the petitioners herein. See n. 2, supra.↩ We note that although the evidence presented indicates that in each of the taxable years in issue most of the unreported income was earned by petitioner Paul Kauffman, we find that the evidence supports a finding that at least a portion of such income was earned by petitioner Wilma Kauffman as well. Also the bank deposits determined to be additional, unreported income were made into petitioners' joint bank accounts. 10. See Christensen v. Commissioner,T.C.Memo. 1982-235; Passero v. Commissioner,T.C.Memo. 1982-218↩.
11. See Klebanoff v. Commissioner,T.C.Memo. 1973-174↩.
12. See Estate of Edwards v. Commissioner,T.C.Memo. 1978-325; Dworshak v. Commissioner,T.C.Memo. 1977-432↩.
13. See LeFay v. Commissioner,T.C.Memo. 1982-420↩. In view of our finding on this issue, we do not consider respondent's alternatively asserted additions to tax.