RALPH AND KAY L. FREEDSON, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

FIRST TRUST COMPANY OF HOUSTON, INC., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6020–72, 6348–72.   Filed March 16, 1977.

*Ralph Freedson,* for the petitioners.
*Daniel A. Taylor, Jr.,* for the respondent.

### OPINION

HALL, *Judge:* On or about April 5, 1976, respondent filed motions to dismiss for lack of prosecution and for judgment by default or, in the alternative, for sanctions in these cases. The Court heard the parties on these motions during its trial session in Houston, Tex., in May 1976. We grant respondent's motions to dismiss for lack of prosecution and for judgment by default. Given the serious consequences of this action, we consider it appropriate to explain the events in these cases.

In notices of deficiency dated April 28 and July 24, 1972, respondent determined the following deficiencies and additions to tax of the petitioners for 1968:

|  |  | Additions to tax | |
| Docket Nos. | Deficiency | Sec. 6651(a)[1] | Sec. 6653(a) |
| 6020–72 | $55,481.52 | $10,822.38 | $2,774.08 |
| 6348–72 | 5,143.28 | 4,427.92 | |

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue.

Petitioners filed their petitions on July 24, 1972, and August 7, 1972. In docket No. 6020–72, Kay Freedson is a party only by virtue of having filed a joint return with her husband, Ralph Freedson. In docket No. 6348–72, Ralph Freedson is petitioner's manager and trust officer and signed its 1968 Federal corporate income tax return. When we refer herein to petitioners, we will be referring to Ralph Freedson in his capacity as an individual and as an officer of First Trust Co. of Houston. Ralph Freedson is an attorney principally engaged in a litigation practice, and was admitted to practice before this Court in 1969.

In docket No. 6020–72, petitioner alleged errors in respondent's adjustments with respect to (1) unreported income reflected in unidentified bank deposits; (2) unreported receipt of equity interests in three properties; (3) unreported income from legal fees; (4) the disallowance of several items as repair expenses; and (5) the sections 6651(a) and 6653(a) additions to tax. In docket No. 6348–72, petitioner alleged errors in respondent's adjustments with respect to (1) unreported income reflected in unidentified bank deposits; (2) the gain on sale of stock recharacterized by respondent as a short-term capital gain; (3) the decrease in petitioner's net operating loss; and (4) the section 6651(a) addition to tax. Respondent answered both petitions on September 12, 1972, and denied the material allegations contained in each.

For approximately the first 3 years after the petitions were filed in these cases, petitioners were represented by two lawyers who were members of the same law firm. One attorney left the firm, but did not file a motion for leave to withdraw until December 23, 1975. The remaining attorney received this Court's permission to withdraw from these cases on November 26, 1975, due to the failure of petitioners to cooperate with him.

On November 26, 1973, this Court granted petitioners' motions for continuance on the grounds that Freedson was unavailable to testify. The Court indicated that it granted these motions reluctantly and would not recommend any further continuances.

Beginning in the middle of 1974 and continuing into 1975, respondent diligently employed the various discovery tools available under this Court's Rules to advance these cases to

trial. On May 16, 1974, respondent served interrogatories on petitioners but received no responses and hence moved, on July 15, 1974, to compel responses. On August 9, 1974, petitioners filed tardy and incomplete answers and, on September 18, 1974, sent a telegram to this Court requesting additional time to respond, a request this Court granted.

Respondent served additional interrogatories on October 3, 1974. Petitioners filed motions for additional time in which to respond on November 11, 1974, which motions were granted November 12, 1974. Petitioner's remaining answers in docket No. 6020–72 were finally filed on November 19, 1974. Respondent thereafter in docket No. 6348–72 filed a motion to compel responses on December 5, 1974. Petitioner's remaining answers in that case were filed on January 13, 1975.

Respondent also filed a request for admissions in both cases on July 29, 1975, and served a request for production of documents on both petitioners on July 22, 1975. On September 12, 1975, respondent moved to compel production of documents. On September 23, 1975, respondent further moved that his requests for admissions be deemed admitted. Petitioners thereafter informally requested that the hearing on these motions be continued from October 15, 1975, until October 29, 1975. This Court granted this request. On October 30, 1975, petitioners filed answers stating that they would voluntarily produce the documents, so the Court denied respondent's motion to compel production without prejudice to renew. With respect to respondent's motion that his request for admissions be deemed admitted, the Court in *Ralph Freedson,* 65 T.C. 333, filed November 12, 1975, held that if no response is made to a request for admissions which has been properly served, the statements of fact in the request are deemed admitted, and therefore respondent's motions were superfluous and were denied.

On November 14, 1975, respondent filed a motion for a pretrial telephone conference for both cases. In the motion respondent alleged that Freedson on October 31, 1975, appeared at the office of respondent's counsel but failed to produce all of his records and did not allow respondent's counsel to examine and inspect those records he did bring. The telephone conference was held on November 25, 1975, at which time the cases were continued and stricken from the

December 8, 1975, trial calendar, but set for report at that time. When the cases were called for a status report on December 8, 1975, Freedson explained he was attempting to retain new counsel. The Court at that time informed the parties that the cases would be reset for trial at the May calendar in Houston.

On or about April 5, 1976, respondent filed the motions to dismiss for lack of prosecution and for judgment by default, or in the alternative, for sanctions, which are the motions presently before us. Freedson's written objections to these motions filed in April 1976 encompass a lengthy list of excuses, justifications, and hints of conspiracies. He asserts that his former attorneys of record and the accountants employed by those attorneys retained records and documents needed to substantiate his claims. He further asserts that he did not obtain subpoenas because he felt these individuals would voluntarily return the records and documents to him. He also argues that he has been overwhelmingly preoccupied by a number of trials held in various distant locations and by other events beyond his control. He adds that he searched diligently but was unable to secure substitute counsel. He also contends that respondent unilaterally set conferences which his busy schedule did not allow him to attend. He finally indicates that he is willing himself to move to dismiss these cases if he is not prepared for trial at the very next Houston trial session of the Court.

These cases were finally called for trial at Houston, Tex., on May 10, 1976. At that time Freedson moved for a third continuance, which the Court denied, instead instructing petitioners to subpoena necessary documents, to attend a pretrial conference on May 13, 1976, and to be prepared for trial on May 14, 1976. Freedson did nothing to prepare for trial—he did not subpoena documents and did not agree to stipulate to anything, not even residence at the time he filed the petitions nor the income tax returns involved. Instead Freedson sought a stay of our order denying his motions for continuance from the Court of Appeals for the Fifth Circuit. On May 13, 1976, the Fifth Circuit denied Freedson's request.

On May 13, 1976, at the pretrial, Freedson informed the Court that he had not subpoenaed any records or stipulated any facts. On May 14, 1976, the trial date, Freedson indicated

that he was not prepared for trial, refused to put on his case, and again moved for a continuance, which the Court again denied. The Court at that time stated that it would take under advisement respondent's motion to dismiss for failure properly to prosecute. Freedson thereafter again appealed this Court's several denials of his motions for continuance to the Court of Appeals for the Fifth Circuit, which dismissed these various appeals for want of prosecution on August 26, 1976.

The only motions still awaiting our consideration are respondent's motions to dismiss.[2]

Rule 123(b), Tax Court Rules of Practice and Procedure, states in part: "For failure of a petitioner properly to prosecute * * *, the Court may dismiss a case at any time and enter a decision against the petitioner." The Advisory Committee Note to Rule 123(b) indicates that Rule 123(b) is a new rule and then adds "Cf. FRCP 41." 60 T.C. 1130 (1973).[3] In view of this fact, in interpreting the boundaries of Rule 123(b), we have consulted the standards applied in interpreting rule 41 of the Federal Rules of Civil Procedure.

We conclude that Rule 123(b) requires us to balance potentially rival considerations. In general it requires this Court to reconcile the policy in favor of having cases heard on their merits with the policy in favor of avoiding harassment to the defending party arising from unjustifiable delay. Cf. *Brown v. Thompson*, 430 F.2d 1214 (5th Cir. 1970) (wrongful death action under 42 U.S.C. sec. 1983 (1871)); *Durham v. Florida East Coast Railway Co.*, 385 F.2d 366 (5th Cir. 1967) (Federal Employers' Liability Act action). In the context of Federal tax litigation, we observe that respondent has the obligation to collect taxes and that he has the right to obtain judicial resolution of tax disputes within a reasonable period of time.

---

[2] Respondent has not asserted that the facts deemed admitted against petitioners affect the procedural posture of these cases. We have analyzed them and conclude that there remain genuine issues of material facts between the parties and thus a motion for summary judgment under Rule 121 would not be in order.

[3] Two early B.T.A. cases could conceivably be read for the proposition that once pleadings meet on an issue, a motion to dismiss for failure to prosecute is not thereafter appropriate. *Edward F. Gehringer*, 16 B.T.A. 214 (1929); *Ohio Sheep & Wool Growers Assn. Co.*, 14 B.T.A. 911, 912 (1928). These cases, however, have never been cited for this proposition, and we think such a proposition has no life under the new Rules.

The balance in these two cases inclines strongly against petitioners. Although petitioners will suffer the detriment of not being heard on the merits of their cases, we conclude that Freedson's bad faith and tactics of delay result in greater harm to respondent. As we recounted above, petitioners have engaged in an almost ingenious array of delaying devices. Petitioners first delayed by doing nothing to comply with respondent's informal discovery efforts. Petitioners then repeatedly did not comply in a timely fashion with formal discovery efforts. This pattern of delay and inaction continued into the final May 1976 Houston trial session. Freedson made absolutely no efforts to prepare for the May 14 trial, despite the Court's specific instructions 3 days earlier. By the time of trial, almost 4 years had passed since the filing of the petitions in these cases, and 2½ years had passed since the Court had informed petitioners that it would look unfavorably on any further requests for continuances. In all this time, Freedson had not stipulated one fact or document, and had failed to cooperate with any of respondent's informal discovery attempts. And these cases are certainly not ones in which a taxpayer has not been notified of the various motions pending before the Court. Despite repeated warnings and adequate advance notice, when the time came for trial after his third requested continuance had been denied, Freedson was simply unprepared and refused to put on his case. He apparently gambled unsuccessfully that he could obtain relief from the Court of Appeals. By this time, 7 years had passed since the time petitioners' taxes were due. "There must come a time when even at some risk of error, a court is justified in accepting as conclusive a series of apparent subterfuges." *Katz v. Commissioner*, 188 F.2d 957, 959 (2d Cir. 1951) (L. Hand, *J.*), affg. a Memorandum Opinion of this Court. The time has come in these cases. We are convinced of the reality of subterfuge and delay on the part of petitioners, with ensuing detriment to respondent's right to have his case tried and petitioners' taxes finally determined and paid.

Petitioners' arguments in opposition to respondent's motion are not persuasive. Even if crucial records were retained by petitioners' former counsel, we see no excuse for petitioners' failure to secure a subpoena. We also are not impressed by Freedson's claims of constant preoccupation with legal busi-

ness. At some point Freedson must accord this case priority over his other affairs or risk dismissal. *Montgomery v. Commissioner,* 367 F.2d 917 (9th Cir. 1966). And, given the events in these cases, we find it impossible to believe respondent was the saboteur of scheduled conferences with Freedson.

We readily concede that "The sanction of dismissal is the most severe sanction that a court may apply, and its use must be tempered by careful exercise of judicial discretion." *Durgin v. Graham,* 372 F.2d 130, 131 (5th Cir. 1967) (libel action), cert. denied 388 U.S. 919 (1967). We would therefore normally be reluctant to grant respondent's motion if a lesser sanction were available.[4] In situations where the cause of the delays was taxpayer's counsel rather than taxpayer, such lesser sanctions could include the imposition of penalties against the offending attorney. Cf. *Hassenflu v. Pyke,* 491 F.2d 1094 (5th Cir. 1974) (securities fraud); *Flaksa v. Little River Marine Construction Co.,* 389 F.2d 885 (5th Cir. 1968) (admiralty), cert. denied 392 U.S. 928 (1968). However, in the cases before us, Freedson himself was the attorney of record and no stranger to the procedures of this Court. See *Tinkoff v. Jarecki,* 208 F.2d 861, 862 (7th Cir. 1953). We also do not consider Freedson's offer to dismiss these cases if he is not ready for trial at our next Houston trial session to be a lesser sanction.

---

[4] Although there are limits to the discretion of a trial court in the context of dismissal, we have not found any case involving abuse of discretion which contained such a chronicle of conscious and deliberate delay as do the cases before us. *Coon v. Charles W. Bliven & Co.,* 534 F.2d 44, 48 (5th Cir. 1976) (action for fraudulent misrepresentation) (confusion by plaintiff's counsel concerning instructions as to the time of the calendar call is insufficient grounds for dismissal for lack of prosecution); *Graves v. Kaiser Aluminum & Chemical Co.,* 528 F.2d 1360 (5th Cir. 1976) (employment discrimination action) (plaintiff had not engaged in any delaying tactics prior to his nonattendance at a pretrial conference; dismissal was error); *Connolly v. Papachristid Shipping Ltd.,* 504 F.2d 917 (5th Cir. 1974) (Jones Act suit) (trial court abused its discretion in dismissing case when it accorded a foreign plaintiff too little time to obtain substitute domestic counsel); *Brown v. Thompson,* 430 F.2d 1214 (5th Cir. 1970) (plaintiff's delay was due to inability to secure certain documents protected by a temporary governmental privilege); *Schildhaus v. Commissioner,* 370 F.2d 549 (2d Cir. 1966) (petitioner was dilatory only in relation to one issue, thus a dismissal of the entire case was too broad), revg. an unreported order of dismissal of this Court, cert. denied 387 U.S. 924 (1967); *Thomas v. Commissioner,* 185 F.2d 851 (6th Cir. 1950) (trial court unreasonably denied petitioner's first motion for continuance and thereupon granted a motion to dismiss when petitioner could not proceed with his case), remanding an unreported order of dismissal of this Court.

If we were to accept this offer, we would in effect be applying no sanction at all but rather rewarding petitioners for their past dilatory conduct.

These cases now before us are unusual in that Freedson was present for trial. Even though dismissal for failure properly to prosecute will normally arise where a party fails to appear at trial, this Court has, under Rule 123(b), previously dismissed a case involving an appearing petitioner. *Robert E. Wade*, 34 T.C.M. 1023, 44 P-H Memo. T.C. par. 75,236 (1975). The Court acted in a similar manner under our former Rules. *Montgomery v. Commissioner*, 367 F.2d 917 (9th Cir. 1966).

After viewing the events in this case, we think the record contains "ample justification for believing that the taxpayer had pursued a studied course of defiance of the government and its taxing authorities." (Fn. ref. omitted.) *Montgomery v. Commissioner, supra* at 920. As the Ninth Circuit Court of Appeals in the *Montgomery* case went on to state:

If a substantial body of Americans displayed the taxpayer's disdainful attitude toward tax obligations, our government would be rendered powerless to provide the service and protection which its citizens have come to expect and enjoy. In seeking to impose more delay upon that which his own lack of responsibility had already created, the taxpayer urged the Tax Court, in effect, to confer upon him a benefit which nearly all those who support the nation cannot enjoy and which they are usually too proud and respectable to seek.

*Montgomery v. Commissioner, supra* at 920. We refuse to confer this benefit upon petitioners.

> *Appropriate orders of dismissal and decision will be entered.*