JAMES F. BREWSTER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brewster v. Commissioner
Docket No. 23623-88
United States Tax Court
T.C. Memo 1993-146; 1993 Tax Ct. Memo LEXIS 145; 65 T.C.M. (CCH) 2320; April 6, 1993, Filed *145 An appropriate order and decision for respondent will be entered. James F. Brewster, pro se. For respondent: David J. Mungo. DAWSON
DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Pate pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PATE, Special Trial Judge: This case is before us on respondent's Motion For Summary Judgment under Rule 121, filed December 10, 1992. Upon leave of the Court, an untimely response was filed by petitioner on March 12, 1993. On June 16, 1988, respondent issued a statutory notice of deficiency to petitioner in which deficiencies in petitioner's income tax of $ 16,213, $ 13,666, and $ 5,143, for the taxable years *146 ended December 31, 1980, 1981, and 1982, respectively, were determined. Respondent also determined that petitioner was liable for the following additions to tax: 1980
1981
1982
Sec. 6653(a)
$ 811
-- -- 6653(a)(1)
-- $ 699
$ 257
6653(a)(2)
-- [1]  [1] 6661
-- -- $ 1,286
Respondent included an explanation of the adjustments made to petitioner's income, deductions, credits, and tax rates in the notice of deficiency. Respondent stated that: 1.a The dependency exemptions for 1980, 1981, and 1982 are not allowed because it has not been established that the persons qualify as dependents within the meaning of Section 152 of the Internal Revenue Code. Accordingly, taxable income is increased $ 2,000.00 for the year ended December 31, 1980, $ 2,000.00 for the year ended December 31, 1981, and $ 2,000.00 for the year ended December 31, 1982. *147 1.b It is determined that the claimed deductions of $ 34,376.88 and $ 39,112.00 for Schedule C in the respective taxable years ended December 31, 1980 and December 31, 1981 are not allowed to the extent of $ 34,376.88 and $ 35,813.00, respectively, because it has not been established that any amount greater than $ -0- and $ 3,299.00 is allowable in the respective years as computed per Schedule 1. Accordingly, taxable income is increased $ 34,377.00 and $ 35,813.00 for the respective tax years ended December 31, 1980 and December 31, 1981. 1.c The claimed Schedule E losses for the tax years 1980 and 1982 have not been allowed because the losses have not been adequately substantiated (as to amount or deductibility). Accordingly, taxable income is increased $ 4,360.00 and $ 25,563.00 for the taxable years ended December 31, 1980 and December 31, 1982, respectively. 1.d The state tax refunds of $ 1,003.00 and $ 1,082.00 reported in the years 1980 and 1981, respectively, are not subject to federal income tax. Accordingly, taxable income is reduced $ 1,003.00 and $ 1,082.00 for the years ended December 31, 1980 and December 31, 1981, respectively. 1.e You are required to *148 substantiate each claimed deduction. Since you did not do so, your itemized deductions for the tax years 1980, 1981, and 1982 have been adjusted to the amount verified or determined to be reasonable based on all available information. Accordingly, taxable income is increased $ 7,062.00 and $ 16,725.00 for the years ended December 31, 1980 and December 31, 1981, respectively, and decreased $ 1,748.00 for the year ended December 31, 1982. (See following computation.) 1980
1981
1982
Per Return
$ 7,062.00
$ 16,725.00
$ 4,253.00 Per Examination
-0-  -0-  6,001.00 Adjustment
$ 7,062.00
$ 16,725.00
($ 1,748.00)
5. Since we disallowed the dependents you claimed, you are not entitled to head of household tax rates. Therefore, for the tax years 1980, 1981, and 1982 your filing status has been changed to single and your tax computed using the single rates. 11.b It is determined that as a result of adjustments to self-employment income for the tax years 1980 and 1981, self-employment tax is due for each of those years as computed in Schedule 2. 16. Adjustments have been made to increase your adjusted gross income, disallowance of the claimed dependents *149 has been made, and your filing status has been changed from head of household to single for the tax year 1981. Therefore, the earned income credit has been disallowed for the year ended December 31, 1981. In a petition filed on September 12, 1988, petitioner contested all of the adjustments made by respondent. Respondent filed an answer on November 14, 1988. A notice of trial was sent to petitioner on November 29, 1988, setting the trial of this case for May 1, 1989, in Denver, Colorado. On March 30, 1989, petitioner filed a motion for continuance stating as his reason therefor that during a "recent unseasonably cold spell in Colorado, Petitioner's pipes burst, flooding his basement where his records were stored", that his "records were destroyed", and that he was in "the process of attempting to reconstruct said records". Respondent vigorously opposed petitioner's motion for continuance and filed, on April 17, 1989, an objection thereto in which respondent stated that petitioner had "consistently failed to produce organized and relevant records to respondent." To support these allegations, respondent attached a detailed description of 46 communications which took place between *150 August 30, 1983, and April 11, 1989, showing that petitioner had indeed consistently failed to produce any organized and relevant records to respondent. On May 1, 1989, Judge Ruwe held a hearing on petitioner's motion for continuance. At the close of that hearing, Judge Ruwe denied petitioner's motion for continuance but postponed the trial until May 4, 1989. On May 4, 1989, however, petitioner appeared and represented to the Court that he was not prepared to proceed. Again, Judge Ruwe rescheduled the trial, this time for May 30, 1989. On May 18, 1989, this case was reassigned to Special Trial Judge Pate. When it was called on May 30, 1989, and again on May 31, 1989, it was readily apparent that none of the voluminous records that petitioner represented that he possessed was organized. Accordingly, we ordered petitioner to segregate each of the documents he claimed he possessed into the same categories as the deductions listed on his tax return and for each of the years. Specifically, we ordered that petitioner prepare a list as to each of these documents in which he listed the date the item was paid, the method of payment, the name of the creditor, and the amount, and that *151 he should prepare a separate list for each expense and each year. We also ordered petitioner to submit a copy of the list, together with the applicable documents, to respondent so that respondent could check the list and the documents attached. At that time, petitioner represented to the Court that "I will hire an accountant to work with me until I can get my records in order." We ordered the parties to file a written status report in 45 days. On July 17, 1989, respondent filed a status report detailing the representations made by petitioner with regard to obtaining professional assistance and complying with the Court's directives. However, he also reported that, on or about June 30, 1989, respondent learned that petitioner had filed a petition in the United States Bankruptcy Court for the District of Colorado. Accordingly, a stay of proceedings was issued in this case. It was lifted on July 12, 1991. On December 11, 1991, petitioner was notified that his trial was again set, this time for May 11, 1992. His case was assigned to Judge Jacobs. Prior to trial, however, respondent filed a motion to compel production of documents and answers to interrogatories, stating therein *152 that he had served requests for production of documents and interrogatories on petitioner on January 29, 1992, and that petitioner failed to respond to either request. On April 1, 1992, we issued an order granting respondent's motion and requiring petitioner to produce the documents requested and to answer each interrogatory. In addition, we warned petitioner that if he did not fully comply, we would consider imposing sanctions, which could include striking the assignment of errors contained in the petition and preventing petitioner from offering evidence to rebut the determinations made in the notice of deficiency. We allowed petitioner until April 27, 1992, to comply with this order. On May 4, 1992, respondent filed a motion to impose sanctions. Respondent reported to the Court that petitioner again had failed to produce any of the requested documents, or any answers to the interrogatories, thereby failing to comply with our order of April 1, 1992. When this case was called from the calendar for trial on May 11, 1992, petitioner failed to appear. Counsel for respondent filed with the Court a motion to dismiss this case for lack of prosecution and such motion was granted by *153 Judge Jacobs on May 26, 1992, ordering deficiencies in income tax and additions to tax determined on the notice of deficiency for the years 1980, 1981, and 1982. However, on June 11, 1992, petitioner contacted the Court requesting that his case be reinstated and, in another communication, informed the Court that he did not appear at the first trial because "I was placed away. I could not respond". Consequently, on June 16, 1992, Judge Jacobs vacated his decision and restored this case to the general docket for trial in due course. The case was again reassigned to Special Trial Judge Pate. Upon petitioner's continuing failure to follow the Court's order for discovery, on August 10, 1992, respondent again filed a motion to impose sanctions. On August 12, 1992, we ordered that a hearing be held on respondent's motion on October 13, 1992. Subsequently, when petitioner did not appear at the October 13, 1992, hearing on respondent's motion, an order was issued again setting the case for trial, this time for October 15, 1992. When this case was called on October 15, 1992, an attorney answered the call on petitioner's behalf even though the attorney had not yet entered his appearance *154 in the case. The attorney reported that he had met with petitioner for the first time the day before. He was not ready for trial and when informed that the best the Court could do would be to continue the case until the following week, he informed the Court that he chose not to enter his appearance. Petitioner appeared and we ordered him to produce the documents and answer the interrogatories requested by respondent by the next day. We also postponed, once again, the hearing on respondent's motion to impose sanctions until we could see whether petitioner complied with our order. We also informed petitioner that if he exhibited a good faith attempt to comply with our order the following day, we would consider a possible further continuance of his trial to the following week. However, when petitioner failed to produce any of the required documents or answers to interrogatories the following morning, the Court granted respondent's motion to impose sanctions, striking all allegations of error contained in the petition and prohibiting petitioner from introducing any evidence to rebut the determinations made in the notice of deficiency dated June 16, 1988. After sanctions were imposed, *155 respondent filed a motion for summary judgment requesting the entry of a decision in the amounts shown in the notice of deficiency for 1980, 1981, and 1982. Respondent argued therein that "Since the petition contains no allegations of error, all issues in this case are deemed conceded pursuant to Rule 34(b)(4) of the Court's Rules of Practice and Procedure" and that "Pursuant to Rule 142 of the Court's Rules of Practice and Procedure, the petitioner bears the burden of proof on all issues in this case." Respondent reasoned that because petitioner is precluded from introducing evidence to rebut the determinations made in the notice of deficiency dated June 16, 1988, petitioner cannot carry his burden of proof as a matter of law. Based on that reasoning, summary judgment is mandated unless petitioner can show that the motion for sanctions was improperly granted. Although petitioner has not filed a response to respondent's motion for summary judgment and because petitioner appeared pro se, the severity of the sanctions imposed in this case demands a discussion of the facts and criteria under which it was issued. These sanctions were imposed under Rule 104(a), which provides, in pertinent *156 part, that: If a party * * * fails * * * (2) to serve answers or objections to interrogatories submitted under Rule 71, after proper service thereof, or (3) to serve a written response to a request for production or inspection submitted under Rule 72 or 73 after proper service of the request, then the Court on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraph (b) or (c) of this Rule. * * * Moreover, Rule 104(c) authorizes certain sanctions which may be imposed if a party fails to obey an order made by the Court under Rule 71, 72, or 73, including: (2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting such party from introducing designated matters in evidence. (3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party. Further, Rule 123(a) provides, in pertinent part, that: If any party has failed to plead or otherwise proceed as provided by these Rules or as required *157 by the Court, then such party may be held in default by the Court either on motion of another party or on the initiative of the Court. Thereafter, the Court may enter a decision against the defaulting party, upon such terms and conditions as the Court may deem proper, or may impose such sanctions (see, e.g., Rule 104) as the Court may deem appropriate. * * * We have imposed sanctions here that are so severe they mandate a dismissal of the entire case. However, we believe it is clear that such sanctions are more than justified because of petitioner's actions. The issues in this case are factual in nature and span a 3-year period. The deductions petitioner claimed on Schedule C and the losses he claimed on Schedule E should have been substantiated by books and records he maintained during the years in issue. See sec. 6001; Roberts v. Commissioner, 62 T.C. 834, 836 (1974). Petitioner failed to voluntarily produce any books and records for respondent's review. We are convinced that he failed to produce any books because he never kept them in the first place. Moreover, even though we have ordered petitioner repeatedly to produce and organize all *158 of his relevant records and to submit such to respondent for review, he has failed to do so. This order was given to petitioner for the first time in May 1989, a date more than 3 years prior to this dismissal. Because petitioner made no effort to organize his records in 3 years, we have no reason to believe that he will do so in the future. Further, when petitioner repeatedly failed to submit such records, respondent attempted to obtain whatever documents or information petitioner possessed to justify his position. Respondent did so by filing a motion to compel production of documents and answers to interrogatories. When petitioner did not voluntarily comply with respondent's request, we ordered petitioner to produce such documents and answer such interrogatories. Not only did petitioner fail to comply with this order when it initially was issued on April 27, 1992, but he continued to fail to produce documents and answers throughout this proceeding. The bottom line is, that throughout the almost 4 years this case has been at issue, petitioner has never submitted to respondent any organized evidence that he is entitled to the numerous exemptions, deductions, credits, and tax *159 rates that he claims he is entitled to. Moreover, although this case has been set for trial on three different occasions, petitioner was not any better prepared for trial when it was called on October 15, 1992, than the first time it was called on May 1, 1989. See Freedson v. Commissioner, 67 T.C. 931 (1977), affd. 565 F.2d 954 (5th Cir. 1978). Based on these facts, we are convinced that at no time since he filed his petition with this Court has petitioner intended to properly prosecute this case to trial. His sole purpose in filing this proceeding has been to delay the redetermination and payment of his tax liabilities. He has done so by adopting a variety of dilatory tactics, including misrepresenting facts and making promises to this Court which he never intended to keep. In doing this, petitioner has stymied three Judges in their efforts to bring this case to trial. We can only imagine the frustration that he has caused respondent. It is clear that petitioner has abused the process, and we see no justification for continuing these proceedings any longer. As we explained in Brooks v. Commissioner, 82 T.C. 413, 430 (1984), *160 affd. without published opinion 772 F.2d 910 (9th Cir. 1985): Delays also affect other taxpayers who are waiting the opportunity to have their cases heard. Only a certain number of cases can be placed on any particular trial calendar. Each time that a case scheduled for trial does not proceed, time is wasted that could have been spent on other cases if they could have been scheduled. Respondent's counsel is required to spend time preparing cases for trial which could be spent working with taxpayers on other cases and attempting to settle them. These unnecessary burdens on the system are unreasonable and unfair from the standpoint of everyone involved. [Fn. refs. omitted; citations omitted.] Accordingly, we will grant respondent's motion for summary judgment and enter a decision for the entire amounts of the deficiencies and additions to tax determined in the notice of deficiency. An appropriate order and decision for respondent will be entered. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. An amount equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence.↩