ESTATE OF HAL HOLTZIN, DECEASED, LEONARD HOLTZIN, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Holtzin v. Commissioner
Docket No. 4968-91
United States Tax Court
T.C. Memo 1994-137; 1994 Tax Ct. Memo LEXIS 125; 67 T.C.M. (CCH) 2553; March 30, 1994, Filed *125 An appropriate order will be issued granting respondent's motion to dismiss for failure to properly prosecute and to determine deficiencies and additions to tax in reduced amounts, and denying respondent's motion for default judgment under section 6653(b) for 1979-1981, and 6653(b)(1) and (2) for 1982-1983. For petitioner: [1] Robert E. Madden. For respondent: John E. Becker, Jr. PARR
PARR
MEMORANDUM OPINION PARR, Judge: This case is before the Court on respondent's motions (1) to dismiss for failure to properly prosecute as to deficiencies and additions to tax in reduced amounts and (2) for default judgment in reduced amounts as to fraud. Respondent initially determined the following deficiencies in and additions to petitioner's Federal income tax: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)
6653(b)(1)
6653(b)(2)
6661
1979
$ 17,415
$ 8,708
--  --
--  1980
44,935
22,468
--  --
--  1981
56,457
28,229
--  --
--  1982
54,252
--  $ 28,087
[1]
$ 13,563
1983
11,418
--  5,709
[1]
2,855
*126 In her motions, respondent revised the deficiencies and additions to tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)
6653(b)(1)
6653(b)(2)
6661
1979
$ 2,563
$ 1,282
--  --
--  1980
7,373
3,687
--  --
--  1981
10,574
5,287
--  --
--  1982
12,546
--  $ 6,273
[1]
$ 3,137
1983
3,920
--  1,960
[1]
-0- The issues for decision are: (1) Whether petitioner has failed to prosecute and is therefore liable for the tax deficiencies for all years and the section 6661 [2] addition to tax for 1982. We hold that it has failed to prosecute and is liable for the tax deficiencies for all years and the addition to tax for 1982, on which it has the burden of proof; (2) whether respondent has met her burden of proof in regard to additions to tax for fraud pursuant to section 6653(b). We hold that she has not. *127 Background
When the petition herein was filed, petitioner's executor was residing in Philadelphia, Pennsylvania. In the course of filing the petition, answer, amended petition, answer to amended petition, and petitioner's reply to respondent's answer, petitioner affirmatively admitted [3] the following allegations contained in respondent's answer: [7.] a. During the taxable years involved [1979-1983], Hal Holtzin (sometimes hereinafter referred to as "petitioner") was one of the principal operators of Academy Marketing Service, Inc. (hereinafter referred to as "Academy"). b. Academy was supposedly a manufacturers' cents-off coupon clearing house, i.e., its alleged business was to process and forward manufacturers' cents-off coupons to major coupon clearing house representatives and manufacturers for redemption. c. For this service, Academy charged its clients, which consisted mainly of food stores, a sliding scale fee based on the number *128 of coupons submitted to it for processing. d. After the clients' coupons were submitted to the coupon clearing houses or manufacturers for redemption, Academy received checks and disbursed the proceeds to the stores by issuing Academy checks. e. During the years involved, petitioner, his father Leonard, and his brother Jay conspired with others, namely, middlemen who represented various stores, to use Academy to fraudulently redeem cents-off manufacturers' coupons. f. As part of the scheme, Academy submitted coupons to the clearing houses or manufacturers for redemption which had not been received by the client stores from customers in the purchase of merchandise. g. The Academy checks to the stores which were generated by such submissions were given to the middlemen, who cashed the checks and then "kicked back" a specified amount to the Holtzins. h. In addition, the middlemen paid certain chargebacks, attributable to their various stores, to the Holtzins in cash. i. Petitioner participated in this scheme from late 1977 to May of 1984. j. During the periods when his brother Jay, who supervised the daily operation of Academy, was absent, Hal Holtzin assumed responsibility *129 for overseeing the firm's operations. * * * q. Hal Holtzin kept no books and records of the illegal payments which he received from the scheme. * * * t. As a result of the scheme, the Holtzins received * * * cash payments from middlemen during the years involved * * *. u. On October 22, 1985, Hal Holtzin and 21 others were indicted in the United States District Court for the Eastern District of Pennsylvania for mail fraud, conspiracy, and filing false Federal income tax returns for the years 1980 through 1983 in connection with the scheme to fraudulently submit millions of manufacturers' cents-off coupons for redemption. v. Following a two-week jury trial, on March 26, 1986 Hal Holtzin was convicted of 43 counts of mail fraud (18 U.S.C. § 1341), 1 count of conspiracy (18 U.S.C. § 371) and 4 counts of filing false income tax returns (26 U.S.C. § 7206(1)). w. As a result of his conviction Hal Holtzin was sentenced to 5 years probation and fined $ 6,000.00. x. Hal Holtzin died on December 24, 1988.
In the course of filing the petition, answer, amended petition, *130 answer to amended petition, and petitioner's reply to respondent's answer, petitioner denied the following relevant allegations contained in respondent's answer: * * * [7] 1. Hal Holtzin accepted unredeemed coupons and cash from the middlemen. * * * p. Hal Holtzin received cash kickback and chargeback payments from the middlemen during the years 1979 through 1983. * * * r. Hal Holtzin concealed the receipt of such payments from the preparer of his income tax returns for the years 1979 through 1983. s. Hal Holtzin failed to report such payments as income on his tax returns for the taxable years 1979 through 1983. t. As a result of the scheme, the Holtzins received the following cash payments from middlemen during the years involved: Year
Leonard Cohen
Gerald Stein
Irvin Setlweck
1979
$ 1,294.98
--    $ 39,921.46
1980
13,161.45
$ 6,405.88
63,257.75
1981
20,966.13
20,231.87
56,498.62
1982
13,174.17
43,490.57
56,859.20
1983
80.19
24,376.34
2,323.00
* * * y. Hal Holtzin's failure to report the income received from his participation in the cents-off coupon scheme for the years 1979 through 1983 was fraudulent with intent to evade tax. *131 z. Hal Holtzin's concealment of such income from the preparer of his income tax returns was fraudulent with intent to evade tax. aa. Hal Holtzin's exclusive use of cash in carrying out the coupon scheme was fraudulent with intent to evade tax. ab. Hal Holtzin's failure to keep books and records of the kickback income which he received was fraudulent with intent to evade tax. ac. Hal Holtzin's failure to report substantial amounts of taxable income over a five year period was fraudulent with intent to evade tax. ad. This five year pattern of understatements of taxable income resulted in the following understatements of tax liability: Year
Understatement of Tax 1979
$ 17,415
1980
44,935
1981
56,457
1982
54,252
1983
11,418
ae. All or a part of the underpayments of tax required to be shown on Hal Holtzin's income tax returns for the taxable years 1979, 1980, 1981, 1982 and 1983 was due to fraud on the part of Hal Holtzin.
Petitioner was represented by Attorney Robert E. Madden until December 15, 1992. At that time, this Court allowed Mr. Madden to withdraw as petitioner's counsel because of a conflict of interest. In this case, Mr. Madden represented *132 petitioner and one of the other two individuals who had been issued a deficiency notice related to this scheme. Since an assessment might have to allocate the total tax liability among the three, it was a conflict of interest to have the same attorney representing more than one of the involved individuals. Thus, at the time of trial petitioner was not represented by counsel. When the case was called from the trial calendar there was no appearance on behalf of petitioner. The executor of the estate, though invited, did not participate in the negotiations or the trial. Respondent arrived at the reduced deficiencies for petitioner by allocating the total income received from the scheme among the three participants, after negotiating with the two living participants. Respondent did not place into evidence decedent's Federal income tax returns for the years at issue, nor did respondent provide the Court with the basis for determining how the income from the fraudulent scheme was reconstructed. Also, respondent did not provide the Court with the basis for allocating the income from the fraudulent scheme among the participants. With regard to the tax deficiencies and addition to *133 tax under section 6661, the taxpayer has the burden of proof. Rule 142(a); Castillo v. Commissioner, 84 T.C. 405, 410 (1985); see also Mailman v. Commissioner, 91 T.C. 1079, 1085 (1988). In light of petitioner's failure to appear at the trial and to participate in any meaningful way in the resolution of this case, respondent's motion to dismiss for failure to properly prosecute and to determine deficiencies and additions to tax in reduced amounts is granted as to the tax deficiencies for all years and the addition to tax under section 6661 for the year 1982. Rules 123(b), 149(b); Freedson v. Commissioner, 67 T.C. 931 (1977), affd. 565 F.2d 954 (5th Cir. 1978). With regard to the additions to tax for fraud under section 6653(b), the Commissioner has the burden of proof. Sec. 7454(a); Rule 142(b); Castillo v. Commissioner, supra at 408. However, where the taxpayers fail to properly proceed with their case, a default decision as to the fraud additions to tax is appropriate if the pleadings establish sufficient facts to support *134 the judgment. Rule 123(a). Respondent contends that the holding in Smith v. Commissioner, 91 T.C. 1049 (1988), negates her obligation to put on a case before this Court. However, Smith is distinguishable from the instant case, in that the taxpayer in Smith denied the Commissioner's allegations generally, and did not deny them specifically, as required by Rule 37(c). Cf. Fed. R. Civ. P. 8(d). For example, in Smith the taxpayer filed a document, entitled "Rebuttal to Respondent's Answer" (filed as a Reply), that made various accusations against the Commissioner and demands over which the Court had no jurisdiction. Smith v. Commissioner, supra at 1051. Here, petitioner thoughtfully and carefully made specific admissions and denials. For this reason, the holding in Smith is inapposite to relieve respondent of her obligation of proving fraud. For 1979 through 1981, section 6653(b) provided for an addition to tax in an amount equal to 50 percent of the underpayment if any portion is attributable to fraud. For 1982 and 1983, section 6653(b)(1) provided for an addition to tax in an amount equal to *135 50 percent of the underpayment if any portion is attributable to fraud. Also, for 1982 and 1983, section 6653(b)(2) provided for an addition to tax in the amount of 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment that is attributable to fraud. To establish fraud, the elements that the Commissioner must prove are: (1) The existence of an underpayment of tax, and (2) that some part of the underpayment was due to fraud. Petzoldt v. Commissioner, 92 T.C. 661, 698-699 (1989). To prove an underpayment, the Commissioner cannot satisfy her burden by relying on the taxpayer's failure to discharge his burden of proving error in her determination of the deficiencies. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). Furthermore, a conviction for willful falsification under section 7206(1) does not require that there be an underpayment of tax. Goodwin v. Commissioner, 73 T.C. 215, 229 (1979), overruled on another issue Wright v. Commissioner, 84 T.C. 636, 643 (1985). With respect to the first prong, the Commissioner *136 must prove that, for the years at issue, the tax imposed against the taxpayer under subtitle A of the Internal Revenue Code exceeds the amount shown on the return. See sec. 6211. In the instant case, respondent has correctly stated that she has the burden of proof regarding the fraud issue. The evidence that she relies on is the fact that decedent was involved in criminal activity, that he kept no books and records of the illegal payments, and that he was indicted and convicted on 43 counts of mail fraud, 1 count of conspiracy, and 4 counts of filing false Federal income tax returns. Respondent contends that the above information, combined with the other allegations affirmatively admitted by petitioner, serves to provide a sufficient basis for this Court to find that the additions to tax for fraud apply in this case. We disagree. Respondent, in her pleadings in the instant case, did not provide information that was easily within her reach: Decedent's 1979-1982 Federal income tax returns as originally filed with respondent; respondent's basis for reconstructing the income allocable to the illegal scheme; and respondent's allocation of the income from the illegal scheme among *137 the participants. Such evidence would have provided information by which the Court could determine whether an underpayment existed. Taking all of respondent's allegations into consideration, including those that were denied by petitioner, we find that respondent's allegations were conclusory statements not supported by specific allegations that provide the basis for the claim of an underpayment of tax. We use our discretion to find that respondent is not entitled to a default judgment on the issue of fraud under the circumstances herein. Cf. Smith v. Commissioner, supra at 1050 (where the Commissioner's answer alleged specifically: "In the absence of complete and adequate books of account and records of income, respondent has determined petitioner's correct taxable income for each of the taxable years 1972 and 1973, on the basis of the net worth method."). The Commissioner must present clear and convincing evidence that the taxpayer made an underpayment. Sec. 7454(a); Rule 142(b); Petzoldt v. Commissioner, supra at 699; Otsuki v. Commissioner, supra at 105. Also, "the Commissioner's *138 pleadings must allege specific facts sufficient to sustain a finding of fraud before he will be entitled to a decision that includes an addition to tax for fraud upon the failure of a taxpayer to appear for trial." Smith v. Commissioner, supra at 1058. Our review of the entire record in this case reveals that respondent has not presented such evidence here. For this reason, we will deny respondent's motion for default judgment in reduced amounts. We note that the parties appear to agree that petitioner has no assets and does not intend to engage an attorney. However, neither petitioner nor respondent has conceded the fraud addition. Therefore, absent a stipulated decision or a motion for entry of decision by respondent, in which respondent concedes the addition for fraud, this case will be calendared for trial on the fraud issue. To reflect the foregoing, An appropriate order will be issued granting respondent's motion to dismiss for failure to properly prosecute and to determine deficiencies and additions to tax in reduced amounts, and denying respondent's motion for default judgment under section 6653(b) for 1979-1981, and 6653(b)(1) and *139 (2) for 1982-1983.
Footnotes
1. As stated herein, Mr. Madden withdrew as counsel on Dec. 15, 1992, and petitioner is without counsel.↩
1. 50 percent of the interest due on the portion of the underpayment attributable to fraud.↩
1. 50 percent of the interest due on the portion of the underpayment attributable to fraud.↩
2. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
3. Asterisks indicate allegations that petitioner denied.↩