T.C. Memo. 2002-43


UNITED STATES TAX COURT


PATRICIA R. CARPENTIER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2430-96.                    Filed February 12, 2002.


<u>Douglas D. Potratz</u>, for petitioner.

<u>Timothy F. Salel</u>, for respondent.


MEMORANDUM OPINION

GERBER, <u>Judge</u>:  Respondent moved for the dismissal of this
case for lack of petitioner's prosecution.  Respondent also moved
that a penalty be awarded to the United States under section

6673.[1]  In this protracted case that has extended over a 5-year
period, petitioner has done little to address the underlying
merits of respondent's determination.  On November 6, 1995,
respondent issued two notices of deficiency determining Federal
income tax deficiencies and additions to tax for failure to file
returns and failure to pay estimated taxes for petitioner's 1989
through 1993 tax years, as follows:

| | Income Tax | Additions to Tax | |
| Year | Deficiencies | Sec. 6651(a)(1) | Sec. 6654 |
|------|------------|-----------------|-----------|
| 1989 | $393,505 | $98,376 | $26,466 |
| 1990 | 55,055 | 13,764 | 3,623 |
| 1991 | 13,284 | 3,321 | 765 |
| 1992 | 42,031 | 10,508 | 1,833 |
| 1993 | 15,416 | 3,854 | 646 |

In great part, respondent relied on Forms 1099 reflecting
proceeds from stock transactions and dividend and interest income
that were ostensibly attributable to petitioner.  Petitioner
alleged error, claiming, in essence, that the proceeds reflected
on the Forms 1099 did not result in income taxable to her.

Without petitioner's cooperation, respondent has been able
to obtain information that supports petitioner's allegation that
she was not obligated to report the proceeds from stock
transactions reflected on Forms 1099.  In the course of

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended and in effect for the
taxable periods under consideration, and all Rule references are
to the Tax Court Rules of Practice and Procedure.

respondent's efforts to develop this case for trial, however, respondent discovered that petitioner had unreported rental income. That rental income, together with income from interest and dividends that respondent had determined in the above-referenced notices of deficiency, results in the following reduced deficiencies and additions to tax, which respondent requests we decide are due from petitioner, if we grant respondent's motion to dismiss for lack of prosecution:

| Year | Income Tax Deficiencies | Additions to Tax Sec. 6651(a)(1) | Sec. 6654 |
|------|-------------------------|----------------------------------|-----------|
| 1989 | $7,214 | $1,491.00 | $487.86 |
| 1990 | 2,659 | 664.75 | 174.10 |
| 1991 | 5,216 | 1,304.00 | 298.10 |
| 1992 | 3,841 | 960.25 | 167.10 |
| 1993 | 3,938 | 984.50 | 164.99 |

During the more than 5 years this case has been pending, petitioner, who did not file returns for the periods in question, did very little to show that she was not required to report the proceeds from stock transactions reflected on the Forms 1099. In addition, petitioner did nothing with respect to respondent's determination of interest, dividend, and rental income. Instead, petitioner has mounted attacks on respondent's and the Court's authority for the purposes of diversion and delay. After respondent was able to develop information regarding the Form 1099 items causing a reduction in the income tax deficiencies, petitioner continued to attack the authority, integrity, and

actions of respondent and the Court.  Finally, when required by the Court to address respondent's Motion to Dismiss, petitioner agreed that the Court could enter a decision for the reduced income tax deficiencies asserted by respondent.  Petitioner, however, did not agree to the additions to tax.  In addition, petitioner contends that a penalty should not be awarded under section 6673.

Respondent's motions will be granted.

Background

The following chronology of some of the significant events[2] is intended to show the protracted nature of this proceeding and petitioner's attempts to delay.

In a petition filed on February 7, 1996, petitioner alleged respondent's determination was in error because of "erroneous 1099 income" from a stock brokerage firm.  Petitioner made detailed allegations concerning her former attorney, who was also attorney for her bank and stock brokerage firm, and others who, according to petitioner's contentions, intended to defraud her by means of some type of conspiracy.  Petitioner inherited stock holdings that she alleged were sold without her knowledge or financial benefit and she further alleged that Forms 1099 were

_____

[2] The chronology set forth in the opinion represents a very small portion of the filings and proceedings set forth in a seven-page docket sheet maintained by the Court.

improperly issued to her. Petitioner also alleged that these same individuals caused or advised her not to file returns in the expectation that she would die "before the truth came out" about the conspiracy to defraud her. Respondent, in his answer, generally denied petitioner's allegations.

During the pendency of this case, petitioner changed attorneys several times and on several occasions requested that the location for trial be changed. The Court attempted to accommodate petitioner's needs, and this case was set for trial on various dates and locations, including October 28, 1996, in Washington, D.C.; April 7, 1997, in Los Angeles; May 21, 1998, in Portland, Oregon; September 21, 1998, in Portland, Oregon; and February 12, 2001, in Portland, Oregon.

Although petitioner sought to continue her case on several occasions, she did not address the underlying merits of respondent's determination. Instead, respondent was forced to resort to the Court's Rules to promote pre-trial development by means of admissions under Rule 90 and enforced stipulation of facts under Rule 91(f). In each instance petitioner did not respond to respondent's requests for admissions or stipulation and/or the Court's orders to comply.

Throughout the history of this case petitioner failed to cooperate and/or to communicate with respondent and provide any information. Instead, petitioner generally accused respondent,

of "abuses, negligence, and IRS failure to [cooperate] as to review of erroneous payor 1099's".  But petitioner did not take steps to either prepare for trial or to develop facts addressing the merits of the controversy before this Court.  Instead and in an attempt to circumvent the Court's jurisdiction, petitioner used collateral approaches, including the seeking of congressional assistance and the assistance of the Taxpayer Advocate.

Petitioner also sought the recusal of one of the trial judges alleging a "Conflict of Interest, bias and prejudice and special interest" essentially because the trial judge was appointed by President William Jefferson Clinton and for numerous other related allegations.

Due to petitioner's failure to cooperate and/or failure to follow this Court's Rules and procedures, respondent, on February 15, 2000, moved for summary judgment based on facts that were deemed admitted under the Court's Rules.  Petitioner responded after several extensions.  In an April 24, 2000 Order, the Court explained that, even though the case had an extended history, petitioner had not produced any probative evidence regarding the underlying issues.  It was further explained that petitioner's sole approach was to "attack respondent's counsel and the Court." The Court, in the April 24, 2000 Order, advised petitioner "that the Court is considering imposing a penalty under section

6673(a)." Petitioner's response to respondent's summary judgment motion was to collaterally attack respondent and the Court and to allege that petitioner was not being afforded Constitutional due process and/or equal protection under the laws.

In a memorandum opinion (T.C. Memo. 2000-258) the Court granted partial summary judgment for respondent. The effect of the Court's opinion was to preclude petitioner "from contesting the matters set forth in respondent's Second Request for Admissions and respondent's Amendment to Answer." The admissions and the amended answer concerned petitioner's dividend, interest, and rental income.[3] The opinion also held that "respondent is not entitled to full summary judgment insofar as material issues of fact remain in dispute with respect to petitioner's entitlement to various deductions for the years in issue." Carpentier v. Commissioner, T.C. Memo. 2000-258.

The case was then set on the Portland, Oregon, trial session beginning on February 12, 2001. On September 15, 2000, petitioner moved for reconsideration of the above-referenced holding. Petitioner's reasons for reconsideration generally concerned petitioner's and her counsel's failure and/or inability to obtain records and their belief that the Court had a bias and

---

[3] It is noted that because of the changes of the trial cities and continuances, at least three different Judges have been involved in petitioner's case.

prejudice towards petitioner and her counsel.[4]  Petitioner's Motion for Reconsideration was denied.

Thereafter, respondent on December 26, 2000, filed a Motion to Dismiss on the ground that petitioner had failed to prosecute her case.  One of the alleged reasons relied upon by respondent for seeking dismissal was that "Notwithstanding the many efforts by respondent to secure cooperation from petitioner and/or her counsel, petitioner has failed and refused in every respect to cooperate to move this case toward resolution."  On January 3, 2001, petitioner moved for a fourth change of the place of trial from Portland, Oregon to San Diego, California.  Respondent objected to petitioner's motion and the matter was set for hearing.  After a telephone conference in which petitioner's counsel agreed to pursue the underlying merits of respondent's determination, the Court in a February 2, 2001, Order, continued the case from the February 15, 2001, Portland, Oregon, trial session and granted petitioner's motion to change the place of trial to San Diego, California.

On March 13, 2001, petitioner Moved to Stay Proceedings and her motion was denied.  Essentially, petitioner alleged that the proceeding should be stayed until petitioner concludes her

---

[4] In our Memorandum Opinion, Carpentier v. Commissioner, T.C. Memo. 2000-258, the Court held that the matters deemed admitted under Rules 37(c) and 90(c) established (1) the nature and amounts of items of income that petitioner failed to report, and (2) her liabilities for the additions to tax determined in the notice of deficiency.

attempt to cause the removal of Tax Court Judges[5] by the President of the United States. In an April 10, 2001, Order, petitioner was given until June 11, 2001, to respond or object to respondent's Supplemental Motion to Dismiss and Motion for Damages under I.R.C. Section 6673, both filed on April 6, 2001. Petitioner sought and was granted an extension to July 11, 2001, on which date her response was filed.

Petitioner's July 11th response advised that she is no longer seeking, through the office of the President of the United States, to have Tax Court Judges removed. Petitioner now advises that she would agree to the reduced amounts of income tax deficiencies sought by respondent. Petitioner, however, without providing any evidence or reasonable cause for relief, does not agree that she is liable for the reduced additions to tax sought by respondent for petitioner's failure to file returns and/or pay estimated tax for the taxable years 1989, 1990, 1991, 1992, and 1993. Finally, petitioner contends that no penalty should be awarded under section 6673 because the delay in this case was caused by respondent.

In particular, petitioner contends that it was respondent's refusal to correct the "erroneous Forms 1099" that caused the delay. In light of the record in this case, we find petitioner's contentions to be disingenuous. Petitioner generally failed to

---

[5] It is unclear whether petitioner was seeking to remove all the Judges of this Court or only those who were assigned to or acted on petitioner's case.

cooperate and to address the merits of respondent's determination throughout the pendency of this proceeding. At each step of the litigation process, petitioner's response to respondent's or the Court's attempts to address the merits was to make collateral attacks on the Court's and respondent's authority. Petitioner alleged various conspiracies to defraud her, but she did not advance evidence showing respondent's determination was in error. When respondent was finally able to obtain information about the Forms 1099 (mostly from third-party sources), adjustments were made reducing the deficiency determination. The reduced income tax deficiencies, agreed to by petitioner, are attributable to unreported income from rental properties and unreported income from interest and dividends.

Discussion

A.    Respondent's Motion To Dismiss

Under Rule 123(b) the Court may dismiss a case and enter a decision where a taxpayer fails properly to prosecute or to comply with the Court's Rules. We have concluded that, in deciding whether to dismiss, we balance "rival consideration[s] * * * [involving] the policy in favor of having cases heard on their merits with the policy in favor of avoiding harassment to the defending party arising from unjustifiable delay." Freedson v. Commissioner, 67 T.C. 931, 935 (1977), affd. 565 F.2d 954 (5th

Cir. 1978)(citations omitted).

In that regard, petitioner has been given every opportunity to litigate the merits of respondent's determination which was issued on November 6, 1995. This case, at petitioner's request, has been moved to several different trial cities and placed on numerous trial sessions only to have petitioner seek a continuance. In all that time, petitioner has done little to develop the case or resolve the issues underlying the income tax deficiencies. At this point, petitioner no longer objects to the entry of a decision for the reduced income tax liabilities proposed by respondent. Petitioner, however, does not agree to the additions to tax and penalties but has not shown reasonable cause as to why she should not be held liable for failure to file returns and/or to pay estimated tax. As indicated in footnote 4 of this opinion, we have already held that petitioner is liable for the additions to tax.

Accordingly, respondent's Motion to Dismiss, filed on December 26, 2000, and respondent's Supplemental Motion to Dismiss filed on April 6, 2001, will be granted and a decision for the reduced amounts of income tax deficiencies and additions to tax under sections 6651(a)(1) and 6654 will be entered against petitioner.

B.    Respondent's Motion for Damages Under I.R.C. Section 6673

Under section 6673(a) a taxpayer may be required to pay the

United States a penalty not in excess of $25,000, whenever it appears to the Court that, among other reasons, the proceedings have been instituted or maintained primarily for delay. See Sandvall v. Commissioner, 898 F.2d 455, 459 (5th Cir. 1990), affg. T.C. Memo. 1989-56; Larsen v. Commissioner, 765 F.2d 939, 941 (9th Cir. 1985). As already described, petitioner has done little, during the more than 5 years this case has been pending, to address the merits of her income tax liability. Instead, petitioner has delayed the proceedings at each step of the way with spurious attacks on the authority and/or integrity of respondent's personnel and the several Judges who have been involved in this case.

Throughout the proceedings, petitioner and her counsel have refused and/or failed to comply with respondent's requests and this Court's Rules in connection with the exchange and stipulation of documents and evidence. Several motions were filed and addressed under Rule 91(f) in an attempt to cause petitioner's compliance with the Court's Rules.

In an April 24, 2000 Order, the Court explained that, even though this case had an extended history, petitioner had not produced any probative evidence regarding the underlying issues. It was further explained that petitioner's sole approach was to "attack respondent's counsel and the Court." The Court, in the April 24, 2000 Order, advised petitioner "that the Court is

considering imposing a penalty under section 6673(a)." In spite of the Court's warning, petitioner continued her collateral attack and failed to address the underlying issues. Petitioner's incorrigible approach continued throughout the proceeding, even though she was given numerous opportunities to comply in the form of continuances, additional time, and the vacating of an order deeming facts to be established under Rule 91(f). In each instance, petitioner did not use the additional time to address the underlying issues in her case.

Under these circumstances, we hold the petitioner has maintained this proceeding primarily for delay. We therefore award a penalty to the United States in the amount of $15,000 under section 6673(a).

To reflect the foregoing,

<u>An appropriate order and</u>

<u>decision will be entered.</u>