T.C. Memo. 2001-205


UNITED STATES TAX COURT


WILLIS CLARK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15384-99.                    Filed August 6, 2001.


<u>Held</u>:  P's case is dismissed for failure properly to prosecute pursuant to Rule 123(b), Tax Court Rules of Practice and Procedure, with respect to income tax deficiencies determined for taxable years 1993 and 1994.

<u>Held</u>, <u>further</u>, P is liable for civil fraud penalties for 1993 and 1994 in accordance with sec. 6663, I.R.C.


Willis Clark, pro se.

<u>Nicholas J. Richards</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, <u>Judge</u>:  Respondent determined the following deficiencies and penalties with respect to petitioner's Federal income taxes for the taxable years 1993 and 1994:

| <u>Taxable<br>Year</u> | <u>Income Tax<br>Deficiency</u> | <u>Penalty<br>Sec. 6663</u> |
|---|---|---|
| 1993 | $60,212 | $45,159 |
| 1994 | 38,407 | 28,805 |

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are:

(1)  Whether petitioner's case should be dismissed for failure properly to prosecute with respect to the deficiencies determined by respondent; and

(2) whether petitioner is liable for civil fraud penalties pursuant to section 6663.

FINDINGS OF FACT

Procedural Background

On June 21, 1999, respondent issued to petitioner a statutory notice determining that petitioner was liable for deficiencies and fraud penalties for the 1993 and 1994 taxable

years.  The deficiencies were based in large part upon respondent's determination that petitioner received unreported income during those years.  On September 23, 1999, petitioner filed a petition with this Court disputing the full amount of the deficiencies and penalties.  Petitioner at that time resided in Riverside, California.

Respondent then answered the petition and further set forth specific allegations of fact in support of the fraud penalties. Petitioner's subsequent reply denied nearly all of respondent's affirmative allegations and maintained that petitioner's tax reporting was "full and accurate".

After close of the pleadings this case was set for trial, and copies of the Court's standing pretrial order were served on the parties.  Therein, petitioner and respondent were directed to begin discussions as soon as practicable, to stipulate facts to the maximum extent possible, and to submit trial memoranda if a basis of settlement could not be reached prior to trial.  The pretrial order also warned generally that any unexplained failure to comply with its provisions could result in sanctions, including dismissal, and stated specifically that failure to cooperate in the stipulation process was a potential ground for such sanctions.

On November 3, 2000, at which time this case was calendared for trial beginning on March 19, 2001, respondent's counsel wrote

to petitioner proposing a conference for November 20, 2000. The stated purpose of the conference was to commence the process of obtaining informal discovery and preparing a stipulation of facts. Neither petitioner nor a representative attended this meeting.

On December 21, 2000, respondent then served on petitioner interrogatories, a request for admissions, and a request for production of documents. Petitioner responded on January 18, 2001, to respondent's request for admissions but sent no response to either the interrogatories or the request for production of documents. As a result, respondent on February 6, 2001, filed motions to compel responses to interrogatories and to compel production of documents. These motions were granted by the Court, and petitioner was ordered to comply on or before February 23, 2001. Petitioner failed to do so.

Meanwhile, on February 15, 2001, respondent's counsel sent to petitioner a proposed stipulation of facts. Thereafter, following several unsuccessful attempts to communicate regarding the pending discovery matters and proposed stipulation, respondent on March 12, 2001, requested and was given leave to file a motion for an order under Rule 91(f) to show cause why proposed facts in evidence should not be accepted as established. This motion was granted, and petitioner was ordered to show cause at trial on March 20, 2001, why the facts and evidence recited in

respondent's proposed stipulation of facts should not be deemed established. Respondent also submitted a trial memorandum prior to trial; petitioner did not.

On March 20, 2001, petitioner appeared at the call of this case. Petitioner asked for an "extension", primarily on grounds that he had been unable to obtain an attorney and that alleged medical reasons prevented him from proceeding. In support of his medical claims, petitioner provided two documents. One was a single-paragraph memorandum from petitioner stating that he was "physically unable to undergo the stress of a public hearing or trial" and also referencing the second document. This second document was a letter dated May 11, 1999, from a physician at the Jerry L. Pettis Memorial Veterans' Hospital to the Riverside Office of the Jury Commissioner, recommending that petitioner be permanently excused from "jury duty" on account of "multiple medical problems".

The Court then explained to petitioner that he could represent himself and that the eleventh-hour allegations of medical problems were not a sufficient basis for further delay. Ample time and opportunity had existed prior to trial for petitioner to prepare his case and to communicate with the Court regarding any relevant situations. The Court therefore informed petitioner that the Government would be permitted to proceed with its case regardless of whether petitioner elected to stay and

participate. Petitioner chose at that point to leave the courtroom and has had no further contact with the Court.

Following petitioner's departure, the Court made absolute the Rule 91(f) order to show cause, ordering that the facts set forth in respondent's proposed stipulation of facts be accepted as established for purposes of this case and that the exhibits attached thereto be received into evidence. In light of these developments, respondent also moved orally to dismiss petitioner's case, insofar as concerned the tax deficiencies determined in the statutory notice, for failure properly to prosecute. The Court took this motion under advisement, and respondent then presented testimony and documentary evidence with respect to the fraud penalties.

Factual Background

As indicated above, some of the facts have been stipulated pursuant to Rule 91(f), and such facts are so found. These stipulations, with accompanying exhibits, are incorporated herein by this reference.

Prior to and during the years at issue, petitioner owned and operated the Appliance Recycling Factory (ARF), a sole proprietorship. ARF was engaged in the business of buying used appliances, refurbishing them, and then reselling the refurbished appliances. Sales of the appliances were made to customers through cash, check, credit, and barter transactions. At least

10 to 12 percent, and up to as much as one-third, of ARF's gross receipts typically took the form of cash. Petitioner actively endeavored to increase the proportion of cash sales by advertising to pay the sales tax with respect to any purchase for which payment was made in cash.

The cash received by petitioner through ARF was used to pay both business and personal expenses. Expenditures for employee wages and purchases from vendors, for instance, were often made in cash.

During 1993 and 1994, petitioner maintained nine bank accounts that were used for both business and personal purposes. In 1993, a total of $480,260 was deposited into these accounts, including $870 cash. In 1994, the deposits totaled $811,816, of which $2,900 was cash. Petitioner did not deposit ARF's cash receipts in his bank accounts.

Sales invoices prepared by petitioner's employees at the time of each appliance sale were forwarded to ARF's bookkeeper, Nina Nippe. Petitioner instructed Ms. Nippe, in preparing ARF's books and records, to "hold back" 10 to 12 percent of receipts, primarily those in cash, from the sales journal. Petitioner indicated to Ms. Nippe that he wished "to get even with the IRS" for an audit conducted in the late 1970s or early 1980s. Ms. Nippe complied with this instruction, at times withholding in excess of 10 to 12 percent when cash sales surpassed that ratio.

The business records so prepared were then sent by petitioner to his return preparer for the years at issue, Jerry Butler.

Mr. Butler obtained the data used in preparing petitioner's 1993 and 1994 returns from the business records supplied by petitioner. Mr. Butler was not provided with the original receipts detailing ARF's sales. When, subsequent to the years in issue, Mr. Butler noticed discrepancies in certain of petitioner's records, he confronted Ms. Nippe and was told at that time about the withholding of sales. Mr. Butler ceased to represent petitioner and thereafter sent to the accountant who apparently had succeeded him in petitioner's employ a letter dated March 8, 1997, which included the following explanation:

> I was reluctant to do the books since after I filed the last tax return, Nina, his bookkeeper, disclosed to me that she conspired with Mr. Clark to destroy sales slips, not report any cash sales and that she therefore prepared sales journals that did not reflect the truthful activities of Appliance Recycling Factory. I requested that she reconstruct proper records. She stated that with the destroyed records by Mr. Clark, his employees and herself that she felt this was not possible. I am therefore reluctant to perform any services due to the tax evasion problems. * * *

The 1993 and 1994 tax returns filed by petitioner reflect gross sales for ARF of $518,673 and $753,782, respectively. Net profit or loss from the business is shown as $6,744 for 1993 and ($119,808) for 1994. Petitioner then reports total taxable income of $1,581 in 1993 and a loss of $122,816 in 1994.

During the subsequent examination of petitioner's 1993 and 1994 returns, petitioner's income was reconstructed using a bank deposits and cash expenditures analysis. Through this method it was determined that ARF had gross sales in 1993 and 1994 of at least $573,673 and $1,020,504, respectively. These adjustments resulted in increases of $17,173 for 1993 and $213,892 for 1994 in the income reported by petitioner. Respondent additionally determined that petitioner failed to include an ending inventory of $135,415 in calculating his cost of goods sold for 1993 and received unreported rental income in the amounts of $6,465 and $4,475, respectively, for the years at issue. With other expense disallowances and computational adjustments, it was determined that petitioner underreported his taxable income by $166,681 for 1993 and by $218,285 for 1994.

OPINION

I.  Income Tax Deficiencies

Dismissal is governed by Rule 123(b), which provides in relevant part:

> For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for other cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against the petitioner. The Court may, for similar reasons, decide against any party any issue as to which such party has the burden of proof, and such decision shall be treated as a dismissal * * *.

The granting of a dismissal under Rule 123(b) lies within the discretion of the trial court and requires us to balance

potentially rival considerations.  Brooks v. Commissioner, 82

T.C. 413, 424-425 (1984), affd. without published opinion 772

F.2d 910 (9th Cir. 1985); Freedson v. Commissioner, 67 T.C. 931,

935-937 (1977), affd. 565 F.2d 954 (5th Cir. 1978).  The policy

of having cases heard on their merits must be weighed against the

policy of avoiding harassment to the defending party arising from

unjustifiable delay.  Brooks v. Commissioner, supra at 424;

Freedson v. Commissioner, supra at 935.

In evaluating the propriety of a dismissal in the matter now

before us, we first address the threshold burden of proof issue

before turning to the relevant policy concerns.  With respect to

income tax deficiencies, the petitioner generally bears the

burden of proof.  Rule 142(a).  Furthermore, although section

7491, applicable to court proceedings that arise in connection

with examinations commencing after July 22, 1998, may place the

burden on the Commissioner in certain circumstances, a

prerequisite is that the taxpayer present credible evidence.

Sec. 7491(a); Internal Revenue Service Restructuring & Reform Act

of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 685, 727;

Higbee v. Commissioner, 116 T.C. 438 (2001).  Thus, while the

record in the instant case does not indicate when the examination

of petitioner's returns began, petitioner has failed to present any evidence and so could not qualify for the protections of section 7491. Accordingly, petitioner here bears the burden of proving that respondent's deficiency determinations are in error.

As regards the two pertinent policy considerations identified above, we are equally satisfied that the balance weighs strongly against petitioner. In the many months that have passed since his petition was filed, petitioner has been uncommunicative, uncooperative, and has otherwise failed to make any meaningful efforts whatsoever to prepare his case for trial. He has acted in contravention of our standing pretrial order, has refused to engage in informal discovery, has ignored orders directing formal discovery, has stipulated no facts, has failed to submit a trial memorandum, and has appeared before the Court on the day of trial completely unprepared to proceed. Hence, while it is true that petitioner will suffer the detriment of not being heard on the merits of his case, he has given us no reason to believe that he is inclined to prepare for doing so at any time in the foreseeable future. In contrast, respondent has already expended significant effort in attempting to bring this matter to resolution. We therefore must conclude, given the pattern of petitioner's behavior and the unlikelihood of impending improvement, that further delay and the harassment

caused thereby to respondent cannot be justified. We shall grant respondent's motion to dismiss pursuant to Rule 123(b) and shall enter a decision against petitioner as to the determined deficiencies for taxable years 1993 and 1994.

II. Fraud Penalties

Section 6663(a) provides for the imposition of a penalty in "an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud." In addition, section 6663(b) specifies that if any portion of the underpayment is attributable to fraud, the entire underpayment is treated as attributable thereto, except and to the extent that the taxpayer establishes some part is not due to fraud.

Respondent bears the burden of proving the applicability of the civil fraud penalty by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To sustain this burden, respondent must establish by this level of proof both (1) that there was an underpayment of tax for each taxable year at issue and (2) that at least some portion of such underpayment was due to fraud. DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989).

A. Underpayments of Tax

Where allegations of fraud are intertwined with unreported and indirectly reconstructed income, the Commissioner may satisfy

the first prong of the above test either by proving a likely taxable source for alleged unreported income or, where the taxpayer asserts a nontaxable source, by disproving the nontaxable source. <u>United States v. Massei</u>, 355 U.S. 595, 595 (1958); <u>Holland v. United States</u>, 348 U.S. 121, 137-138 (1954); <u>DiLeo v. Commissioner</u>, <u>supra</u> at 873-874. The Commissioner may not, however, simply rely on the taxpayer's failure to prove error in the deficiency determination. <u>DiLeo v. Commissioner</u>, <u>supra</u> at 873; <u>Otsuki v. Commissioner</u>, 53 T.C. 96, 106 (1969).

Here, the evidence clearly establishes cash sales made by ARF as a likely source of unreported income. Furthermore, petitioner has at no time alleged nontaxable sources in an amount sufficient to negate the purported unreported income, and respondent's bank deposits analysis took into account nontaxable transfers and loans in excess of $66,000. The record thus contains clear and convincing proof that petitioner underpaid his income taxes for the 1993 and 1994 taxable years.

B.  <u>Fraudulent Intent</u>

The second prong of the fraud test requires respondent to show that a portion of the foregoing underpayment is attributable to fraud. Fraud for this purpose is defined as intentional wrongdoing on the part of the taxpayer, with the specific purpose of avoiding a tax believed to be owed. <u>Stoltzfus v. United</u>

States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958). Stated differently, imposition of the civil fraud penalty is appropriate upon a showing that the taxpayer intended to evade taxes believed to be owing by conduct designed to conceal, mislead, or otherwise prevent the collection of taxes. DiLeo v. Commissioner, supra at 874; Brooks v. Commissioner, 82 T.C. at 431.

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Brooks v. Commissioner, supra at 431; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Brooks v. Commissioner, supra at 431; Beaver v. Commissioner, 55 T.C. 85, 92 (1970). However, because direct proof of a taxpayer's intent is seldom available, fraud may be established by circumstantial evidence. Spies v. United States, 317 U.S. 492, 499 (1943); Brooks v. Commissioner, supra at 431. In this connection, courts have developed a nonexclusive list of circumstantial indicia, or "badges", of fraud that will support a finding of fraudulent intent.

In Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601, the Court of Appeals for the Ninth Circuit, to which appeal of this case would normally lie, enumerated the following badges of fraud distilled from then-

existing case law: (1) Understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealing assets; and (6) failure to cooperate with tax authorities. The Court of Appeals also identified dealing in cash as an additional fact which would support a finding of fraud. Id. at 308.

Applying these considerations to the case at bar, we conclude that petitioner fraudulently intended to underpay tax for each of the years at issue. The record unequivocally demonstrates that petitioner understated his income, maintained inadequate records, failed to cooperate with taxing authorities, and engaged in extensive dealings in cash. Moreover, the evidence reveals that petitioner expressly directed the preparation of false business records to conceal a significant percentage of his cash transactions and then himself provided those erroneous records to his return preparer. The only logical inference to be drawn from such circumstances is that petitioner knowingly and actively structured his affairs with the specific

purpose of avoiding his Federal tax obligations.  We hold that petitioner is liable for the section 6663 civil fraud penalties as determined by respondent.

To reflect the foregoing,

<u>An appropriate order will be issued granting respondent's motion to dismiss, and decision will be entered for respondent</u>.